### LYDIARD-PETERSON CO. v. WOODMAN.†

(Circuit Court of Appeals, Eighth Circuit. March 3, 1913.)

#### No. 3,738.

1. COPYRIGHTS (§ 36*)—EXTENT OF MONOPOLY.

The holder of a copyright has no monopoly by virtue of the issued copyright itself; his rights being measured solely by the statute, provided he has complied therewith.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 37; Dec. Dig. § 36.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† For opinion on rehearing see 205 Fed. ——.

2. COPYRIGHTS (§ 29*)—NOTICE—MAP.

    Act June 18, 1874, c. 301, 18 Stat. 78 (U. S. Comp. St. 1901, p. 3411), provides that a copyrighted publication must contain a notice on its face or title page, "'Entered according to Act of Congress, in the year ......, by A. B., in the office of the Librarian of Congress, at Washington;' or at his option the word 'Copyright,' together with the year and the name, thus: 'Copyright, 18—, by A. B.'" *Held* that, where a map of a lake and surrounding property was drawn by J. C. Woodman and published by the Woodman Publishing Company, a copyright notice on the map, "Copyright 1908, Drawn by J. C. Woodman," was insufficient.

    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.*]

3. COPYRIGHTS (§ 29*)—DIRECTORY—MAP.

    Complainant published a map of a lake and surrounding territory, called "Woodman's Minnetonka Map-Directory, 1908." On the title page of the book were the words "Copyright 1908 by Prentiss M. Woodman, Woodman Publishing Company, Lumber Exchange, Minneapolis, Minn." The map had on its face "Woodman's Minnetonka Map-Directory, Copyright 1908, Drawn by J. C. Woodman." It also contained red figures referring to the index book or directory by which the particular pieces of property shown on the map were further described and identified. The book contained a pocket for the map, both being referred to as "Map-Directory" and intended to be used together. Five hundred more maps than books were published, and some extra maps were sold alone, but not until after the book was copyrighted. *Held*, that the map was a part of the book, and protected by the valid copyright notice in the book, though the notice on the map was insufficient.

    [Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 29, 30; Dec. Dig. § 29.*]

    Hook, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Suit by Prentiss M. Woodman against the Lydiard-Peterson Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Milton D. Purdy, of Minneapolis, Minn. (William A. Lancaster and David F. Simpson, both of Minneapolis, Minn., on the brief), for appellant.

Charles J. Traxler and Prentiss M. Woodman, both of Minneapolis, Minn., for appellee.

Before SANBORN and HOOK, Circuit Judges, and McPHERSON, District Judge.

SMITH McPHERSON, District Judge. This is an action in equity for an injunction and damages for infringement of an alleged copyrighted map or chart of Lake Minnetonka, Minnesota. The Lydiard-Peterson Company, the defendant in the court below, pleaded a number of defenses, only one of which will be considered. The lower court adjudged the Lydiard-Peterson Company guilty of infringement, awarded plaintiff damages in the sum of $75 and costs, including an attorney fee of $50, and perpetually enjoined the Lydiard Company from reproducing, printing, or selling the map it had been printing and selling. Thereupon this appeal was taken.

To save expense and to limit the controversy, the parties signed

and filed a stipulation, to the effect that the only question for determination by this court is as to the sufficiency of the notice on complainant's alleged copyright. Prentiss M. Woodman had printed a Directory showing the ownerships of all residences and property adjacent to and near by the lake. Inside of the cover is a pocket for a map. There were 500 copies of the book and 1,000 maps printed. In some instances the book with map included sold for $3, and in other instances the map alone for $1. Woodman himself sold them, and a few were sold at book stores. On the map is the following:

"Woodman's Minnetonka Map-Directory. Copyright 1908. Drawn by J. C. Woodman."

On another part of the map is the following:

"Published by Woodman Publishing Co., 841 Lumber Exchange Building, Minneapolis, Minn. Red figures refer to Index Book with ten special books. Price, including book, $3.00 postpaid."

The bill of complaint refers to the map only. The map has red numerical figures representing each piece or tract of ground. By referring to the corresponding figure in the Directory, the name of the owner or occupant is ascertained. The description of defendant's map need not be stated, because the stipulation recites:

"It being conceded by the appellant, if the notice of copyright is sufficient, the record contains evidence sufficient to support the finding and judgment of the court as to infringement."

It was also stipulated that the outside cover of the book, and the title page, introduction, and contents of the book should be certified to this court—

"for the reason those portions of the exhibit above specified contain all matters in any wise affecting or pertaining to the question raised and to be considered on this appeal, to wit, the sufficiency of the notice contained on Exhibit A (which is the map)."

So that it is necessary to turn to the book (Map-Directory) in so far as it is in the record. On the title page is the following:

"Woodman's Minnetonka
Map-Directory, 1908"

and the following:

"Woodman's Minnetonka Map-Directory,
1908.
Copyright 1908 by Prentiss M. Woodman.
Woodman Publishing Company, Lumber Exchange,
Minneapolis, Minn."

The requisite copies were timely deposited with the Librarian of Congress and on March 25, 1908, the copyright for 28 years was issued.

[1] The holder of a copyright has no monopoly by virtue of the issued copyright itself, but his rights are measured by the statute, provided always he has complied with the statute. Thompson v. Hubbard, 131 U. S. 123, 9 Sup. Ct. 710, 33 L. Ed. 76; Merrell v. Tice, 104 U. S. 557, 26 L. Ed. 854; Wheaton v. Peters, 8 Pet. 591, 8 L.

Ed. 1055. The statute of June 18, 1874 (18 Stat. 78, c. 301 [U. S. Comp. St. 1901, p. 3411]) provided that a publication should show on its face or title page:

"'Entered according to Act of Congress, in the year ......, by A. B., in the office of the Librarian of Congress, at Washington;' or, at his option the word 'Copyright' together with the year * * * and the name * * * thus— 'Copyright, 18— by A. B.'"

[2] This was on the book at its appropriate place with greater definiteness than required by statute. And if we were dealing with the book or Directory alone, the case would not require argument to show that the statute had been complied with. And the subsequent statute, enacted after complainant had obtained his copyright, is of less specific requirements. See Act March 4, 1909, c. 320, 35 Stat. 1079 (U. S. Comp. St. Supp. 1911, p. 1472).

[3] Turning to the map, and considering it alone, we find at one place on its face in large print:

"Woodman's Minnetonka Map-Directory. Copyright 1908. Drawn by J. C. Woodman."

In another place the words:

"Published by Woodman Publishing Co., 841 Lumber Exchange, Minneapolis, Minn."

In the light of the fact that the record shows Prentiss M. Woodman to have been the author of the copyright, and that J. C. Woodman was the draftsman of the map, and that they were father and son, of the same city and same business address, that of and by itself, the notice on the map is not sufficient. The cases of Burrow-Giles Lithographic Company v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279, 28 L. Ed. 349, and Bolles v. Outing Company, by the Court of Appeals, Second Circuit, 77 Fed. 966, 23 C. C. A. 594, 46 L. R. A. 712, affirmed in 175 U. S. 262, 20 Sup. Ct. 94, 44 L. Ed. 156, although not passing on the point, have gone far in upholding the sufficiency of a notice. In the Sarony Case the initial of the given name was given. In the Bolles Case no initial of the first name was given, and the surname only was recited. But the subject-matter was a photograph, and there was no other photographer by that name in the city named. To uphold the map alone in the case at bar is to carry the defective notice further than either of the cases cited, and as believed further than any appellate court has yet gone. So that, if the map alone were being considered, it would follow that the notice is insufficient.

But we are of the opinion that in this case the book or Directory and the map are one production, and that the Directory includes the map. We fail to find a material difference whether the map is inclosed in the pocket to the Directory, or whether it is stitched or otherwise fastened to the cover, or elsewhere in the Directory. On the map is the hyphenated word "Map-Directory," showing that it is of itself not complete. To use it, the figures necessarily carry the reader to the book or Directory. And on the title page of the book are the same words "Map-Directory." These carry the reader to the map.

But the argument against the foregoing is that there were but 500 books published and 1,000 of the maps, and that some of the 500 extra maps were alone sold. But the answer to that is: He had the right to print as many extra maps as he desired, provided he did not distribute them. And those separate maps put in circulation were thus distributed after he had a valid copyright. The effect of that may or may not amount to an abandonment, the very question we are precluded under the stipulation from considering. The parties have agreed that we shall only consider the sufficiency of the notice.

Paragraph 8 of the defendant's answer is an affirmative defense to the effect that subsequent to March 28, 1908 (date of complainant's copyright), the complainant sold the map separately and thereby lost his exclusive rights under his copyright. This question was for the District Court to decide, and presumptively was correctly decided. And that holding is not here for review.

Our holding is that the Directory, with the map in the pocket, constitute but one publication, on which, at the appropriate place, is a sufficient notice. What was done with the extra maps with a defective notice at a subsequent time, and the effect thereof, is now not material.

The decree of the lower court should be affirmed; and it is so ordered.

HOOK, Circuit Judge (dissenting). This suit was brought for the infringement of the copyright of a map, not of a book and map. It is conceded in the foregoing opinion, as indeed it must be, that the notice of copyright on the map, taken by itself, is insufficient; therefore the map separately regarded was subject to duplication by any one. The notice required by the act of Congress to be placed upon each copy of the thing copyrighted must be sufficient to advise the public of the name of the author, the existence of the claim of exclusive right, and the date at which the right was obtained. This notice has always been held to be a condition precedent to the perfection of a copyright. To find a sufficient notice in this case my Brothers leave the map and go to the title-page of a book. But the map is not a physical part of the book; it is a part only by reference found in the book. True, there is a pocket in the book in which the map might be placed for convenient keeping; but whether it is kept there and used in connection with the book depends upon the whim or desire of the owner. This is so, because the map as such is complete in itself and has a use independently of the book. To that extent it is a distinct publication. The course of complainant confirms this. He published 500 books and 1,000 maps, and put the extra maps on the market and sold some of them. This is not mentioned to show abandonment of the copyright or forfeiture, but simply to show complainant's course of trade, and that he regarded them as publications, each independently useful and marketable.

Heywood v. Potter, 22 L. J. Q. B. 133, is in point. It arose under the English Copyright of Designs Act, 5 & 6 Vict. c. 100, § 4, which required the proprietor of a design to put upon each article to which

it was applied the letters "Rd," meaning registered. The plaintiff copyrighted a design for wall paper which he made and sold for use in 12-yard lengths. Upon these he placed the required letters. But it was also the practice to sell or otherwise issue patterns or samples 27 inches long cut from the 12-yard lengths. These samples so published and disposed of did not bear the mark of registration; and it was held the plaintiff was not entitled to relief.. Regarding the same act, Romilly, Master of the Rolls, said:

"Whatever the original manufacturer who has got a registered design sells, a separate piece it may be, he must give notice upon that piece that it is registered." Sarazin v. Hamil, 32 L. J. Ch. 380.

The notice prescribed by the act of Congress is to protect the public from charges of piracy, and it should be placed where it will reasonably accomplish its object, having regard to the character of the article and the customs of trade.