Dennis W. **KOONTZ**, et al., Plaintiffs,

v.

Richard **JAFFARIAN**, et al.,
Defendants.

Civ. A. No. 84–551–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

May 14, 1985.

David A. Blumenthal and Peter G. Mack, Alexandria, Va., for plaintiffs.

Theodore A. Breiner and Alfred W. Breiner, Alexandria, Va., for defendants.

## MEMORANDUM OPINION

BRYAN, District Judge.

This is a copyright infringement, trade secret misappropriation and unfair competition action which probably would never have occurred but for the modern computer. It evolves from an electrical estimating labor manual used by electrical contractors and estimators to prepare bids on contracts for the construction of projects such as office buildings, schools and hospitals. Each manual contains a comprehensive data compilation of labor units—a tabulation of over 57,000 entries showing the amount of labor hours necessary to install

the multitude of electrical items used in nearly every type of construction project.

Sample pages of the plaintiff's manuals are attached as Appendices B and C.

The plaintiff, Dennis W. Koontz (Koontz),[1] who has been in the electrical estimating business for 25–30 years, began working on a manual in 1962. In 1968 his manual (PX 1–A) was published. A copyright for it was registered in the United States copyright office (PX A–2). That copyright is not at issue in this case. In 1974 an update of the 1968 manual was published by Koontz. It was in two volumes (PX A–3A, 3–B). A registration for a copyright on this publication was had on March 11, 1974 (PX A–4).

Prior to 1975 Koontz would use the manual in this way: he would "take off" the electrical requirements from a set of plans and then go through his manual and assign code numbers, page numbers, and quantities necessary to estimate the job. Koontz then gave the information to his secretary to do the computations and come up with an estimate. The figures thus reached would be allocated by percentage to certain code designations (PX F–6) and compared with tables developed in the past to determine whether the percentages were out of line with what experience had shown was the usual percentage. If they were, the estimate would be reexamined. Forms and instructions for these various steps were included in the manual.

In 1975 Koontz discussed with Hewlett-Packard Company (H–P), a seller of computer hardware, the possibility of computerization of the steps necessary to come up with an estimate from the manual. This was advantageous to H–P because it gave H–P a software program to use in selling its hardware. It was advantageous to Koontz since it was an opportunity to sell manuals without much cost to him or his corporation, plaintiff Master Service Corporation, through the extensive marketing system of H–P. The discussions resulted in a February 1, 1976 agreement between

---

**1.** There are actually two plaintiffs, Koontz and his corporation, Master Service Corporation. As used in this opinion, Koontz refers to both plaintiffs.

Koontz and H–P (PX A–23). In it Koontz agreed to provide H–P with the mathematical algorithms and assistance necessary to develop a computerized version of Koontz's electrical estimating system and H–P agreed to create a software program so that the information Koontz had formerly given to his secretary when preparing an estimate could be used as input for a computer. H–P agreed to pay Koontz a $3,000 fee. Koontz agreed to supply the manuals (PCP–5) which were in turn to be supplied by H–P to each H–P customer who purchased H–P's hardware and electrical software package. H–P agreed to pay Koontz $250.00 per manual supplied to a customer. By this time Koontz had updated and revised his two volume 1974 manual, producing a one volume 1975 version (PX A–7A),[2] and developing and adding such things as labor code and material code designations, as shown on the samples, Appendices B and C.

Koontz worked with a H–P programmer, Ray Wells, and gave Wells the procedural, step-by-step information needed for the writing by Wells of an electrical estimating program, designed to operate on the hardware H–P desired to market. The program, including significant portions of data taken from the 1975 manual (the data compilation), was transferred to and stored on magnetic tape. With the program and data compilation on tape, estimates could be obtained by a customer electrically in the same way Koontz had obtained estimates manually. However, it was still necessary to use the manual since the tapes' storage capacity was limited and the information contained on them was referenced by code numbers and abbreviated descriptions (as opposed to full) not known to the average estimator. The code numbers also appeared in the manual, along with catalog numbers, descriptions and drawings of the item itself, and were the key which enabled the contractor to do a complete estimate. A customer could input the code numbers from the manual and the computer would look up the corresponding labor units and price and print out the result. The deposition testimony of Ronald Schwitzer, a defendants' witness, while perhaps indicating that he does not need a manual because he has memorized most of what is in one, does not persuade the court that the data base need not be used in conjunction with a manual. A computer can print out, with the exceptions just noted, an entire data compilation from the manual (PX A–7C) although such a printout was not intended as nor could it serve as a substitute for the manual. The data compilation printout is part of what is referred to as the electrical estimating software. That software also includes the electrical estimating *program* which is the set of instructions to the computer to enable it to perform certain electrical estimating tasks by using the stored data compilation and other input data taken from the manual by the customer to produce the estimate. It is this software which the defendants used, which they say is not copyrightable and which they say was provided without restriction to H–P and through H–P to the defendants. The plaintiff does not assert that the *program* is copyrightable, only the data compilation.

*Copyright*

■ The 1974 manual[3] was registered within five years of its first publication. Such a registration is consequently prima facie evidence of the validity of the copyright. 17 U.S.C. § 410(c).[4] The 1975 and

---

2. The 1974 manual was divided into an operations volume and a data compilation volume. The 1975 manual is also divided into an operations part and a data compilation part, in the same volume. The operations volume and operations part are not challenged as being infringed. The data compilation in both the 1974 and 1975 manual are.

3. Although the amended complaint charges infringement of the 1968 manual, that allegation was withdrawn at trial.

4. 17 U.S.C. § 410(c) states:
"In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be ac-

1979 manuals were not registered until 1984, and the weight to be accorded those registrations is discretionary with the court. *Id.*

■ The court has no difficulty in finding that the 1974 copyright, even without the aid of the statutory presumption, is valid. The manual was original with Koontz, its author. It is true that there were other manuals in the field, principally the NECA (National Electric Contractors Association) manual. But Koontz's manual differs substantially from the NECA manual, and certainly is not copied from it. The same is true of the 1975 and 1979 manuals, which were Koontz updates, revisions and improvement. As to the copyrightability of the subject matter of the data compilation portions of the manuals, there can be no question that while facts or data are not themselves copyrightable, compilations of those facts or data can be. Under the 1909 Act which governs the 1974 and 1975 manuals, such compilations were protected [former] 17 U.S.C. § 7. And of course the 1976 Act, which governs the 1979 manual, also provides protection for compilations, 17 U.S.C. § 103(a). Indeed, the court does not understand the defendants to contest the copyrightability of the manuals. The tapes and the data on those tapes, however, contained no copyright notice, and the issue raised by the defendants is that, without a copyright notice, the copyright did not extend to the data stored on the tapes which, defendants assert, were therefore injected into the public domain. This defense does not apply to the 1974 manual because that was not computerized, and there is no data base or tape related to it. The defendant also contends that the agreement with H–P constituted a transfer to H–P without restriction of the software, including the data stored on the tapes.

■ The court rejects both assertions. As to the lack of copyright notice on the software, plaintiff asserts that the manual

and the tapes or disks on which were stored the data base and program were registered as a unit publication. While there is no statutory recognition of a unit publication doctrine, the courts have in certain instances ruled that affixation of the copyright notice to one element of a publication containing various elements gives copyright protection to all elements of the publication. The rule has been confined to situations where the elements are integral or essential parts of one another. *Lydiard-Peterson Co. v. Woodman,* 204 Fed. 921 (8th Cir.1913); *Patterson v. Century Productions,* 93 F.2d 489, 493 (2nd Cir. 1937). The rule has been enunciated not just with respect to physically connectable elements, but has been applied where the notice was attached only to instruction sheets. *Monogram Models, Inc. v. Indertro Motive Corporation,* 492 F.2d 1281 (6th Cir.1974); *Data Cash Systems, Inc. v. JS & A Group, Inc.,* 628 F.2d 1038, 1041 (7th Cir.1980) (dicta). It is appropriate to apply the rule here. The software, hardware *and a manual* were always sold, and intended to be sold as a unit. While the manual could be sold separately, the software, including the tapes, were not sold without a manual. Indeed, while there is a conflict in the evidence on this, the court finds that the average customer could not use the software without a manual. The manual was, for all intents and purposes, the instruction sheet for the use of the software.

■ The purpose of copyright notice, as highlighted by 17 U.S.C. § 405(b), is to protect innocent infringers. *Uneeda Doll Co. v. Goldfarb Novelty Co.,* 373 F.2d 851 (2nd Cir.1967); *Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.,* 161 F.2d 406, 409 (2nd Cir.1946). *Moger v. WHDH, Inc.,* 194 F.Supp. 605, 606 (D.Mass., 1961). These defendants were well aware that the data compilation on the tapes which formed the basis of their own publication came from the plaintiff's manuals. They are not inno-

corded the certificate of a registration made thereafter shall be within the discretion of the court."

cents misled by any omission of a copyright notice on the software.

■ As to the February, 1976 agreement with H–P, a careful reading of it, and particularly the addendum, taken in light of Koontz's testimony, reveals that what was released to H–P was the work product which came about as a result of the agreement.[5] The 1975 manual and data compilation were in existence prior to the agreement and were not the work product of the agreement. The reversion to the plaintiff after a year of the right to revise and update the data compilation was only to allow Koontz to deal with the customers of H–P who had purchased the package. Agreeing to "supply" the manuals for sale to a customer with the hardware was not an agreement to assign the copyright in previously prepared material. The data itself was put on tapes which were "secure," i.e., the program, as distinguished from data, could not be printed out.

From the foregoing the court finds that Koontz is the owner of copyrights in the 1974, 1975 and 1979 manuals and the data compilations from those manuals which are part of the information stored on the H–P tapes (subsequently transferred onto Texas Instrument disks).[6]

### Infringement

■ In order for there to be infringement, it must of course be shown that the defendants copied the plaintiff's works. And this is so even if the works of the defendants are identical to the copyrighted works, although similarity between the two works coupled with access will support an inference of copying.

■ The Jaffarian manual and the Labbie software (other than the program) are the allegedly infringing publications. Defendants concede that "... the basis of the Jaffarian manual and the Labbie software is the uncopyrightable H–P software provided by H–P without restriction to Labbie." (Defendants' Proposed Findings of Fact, ¶ 33.) The court has already determined that the data compilation portion of the software, and it is that from which the Jaffarian manual was taken, *is* copyrightable and copyrighted. But the court need not rely on this concession. Both Labbie and Jaffarian had access to Koontz's manuals. Jaffarian had access when he was working in and adjacent to Koontz's office in Dallas, Texas, in the 1975–1976 period, during which Jaffarian had use of the 1974 manual and the 1975 update manual. Jaffarian came back to work for Koontz in 1978, as an exclusive agent for Koontz in Florida for the sale of the Koontz manuals. This relationship lasted until November 1979. Prior to this termination Koontz had formed a joint venture with Labbie, who was an OEM (original equipment manufacturer) for H–P, as a means of both getting a better discount from H–P through cooperative buying of hardware. This business relationship terminated in March 1981. Labbie had received copies of the electrical estimating tapes from a H–P employee, Ron Myers, for a period of time, beginning in 1977 and lasting approximately 18 months. Labbie had asked for and received unsecured tapes from Myers so that, according to Labbie, he could make changes and enhance the package through program modifications. During the time Koontz and Labbie worked together certain changes were made in the manual and data compilation. The changes were Koontz's changes. Labbie's role was to fit them into the computer program.

After Labbie severed his relationship with Koontz, Labbie and Jaffarian began working together in 1982. Labbie sold to Jaffarian, for the latter's use, the system including the hardware and the data compilation, the vast majority of which was what

---

**5.** "Computer programs" are enumerated as being one example of work produced by the agreement. As indicated, no claim is made that any use of the program is infringing.

**6.** The plaintiff is a citizen of the United States. 17 U.S.C. § 104(b)(1). No issue is raised by the defendants as to plaintiff's compliance with the statutory formalities of registration, including the correction of errors in the original registration of the 1975 manual and data.

Labbie had obtained from H–P, although in 1982 the data compilation was transferred from the tapes onto disks which were compatible with Texas Instrument hardware. These disks were supplied to Jaffarian by Labbie. Labbie continues to sell electrical estimating software exclusively to Jaffarian, and Jaffarian buys all of the software for his manuals from Labbie. The basis of what Labbie has and is supplying to Jaffarian is the data compilation and modifications to the data compilations made by Koontz and programmed by Labbie during the joint venture.

In 1977 and 1978 Jaffarian had purchased a computer from H–P. Included in the package were the tapes. He already had a manual. He used these tapes until fall of 1982 when he got the Texas Instrument hardware and disks from Labbie.

On April 3, 1983, Jaffarian published his manual (PX A–16). A comparison of it with his own manuals prompted the filing of this action by Koontz on June 1, 1984.

A physical viewing of the parties' manuals, that of Jaffarian on the one hand and the 1975 and 1979 Koontz on the other is the best evidence that the similarities are "... so striking as to preclude the possibility that plaintiff and defendant independently arrived at the same result." *Arnstein v. Porter,* 154 F.2d 464, 468 (2nd Cir.1946). For this purpose the court has attached, for comparison, page 11.4 of the Jaffarian manual (App. A), and page 11.4 of the 1975 and 1979 manuals of Koontz (App. B & C). In addition to being visually similar, the following likenesses appear:

1. Both manuals have six major code sections, numbered 1–6 and identified by nearly identical tabbed titles.

2. Each manual has thirty-eight subsections with substantially the same titles.

3. Each manual has the same page numbering sequence which begins each subsection with a number followed by a decimal point subsequently followed by consecutive numbers after the decimal

point, i.e., Section 17 of each manual has page numbers 17.1–17.8.

4. Each manual begins each subsection with a ".1" as the first decimal page number, with the exception of section 20 which begins with "20.0" for each manual.

5. Each manual has pictures on the left-hand side, a material code column, a description column and three labor columns ordered from left-to-right in the same fashion.

6. Each manual divides labor units into three columns and uses the same labor code numbers, 2, 4, or 6, to identify each column.

7. Each manual has a material code number to identify each line item.

8. Each manual employs exactly the same odd-digit number coding scheme for the material code.

9. Each manual employs a non-decimal point consecutive integer for an "ID" or "page verify" number, and these numbers are each correlated to the same decimal point page number, i.e., page 15.2 of each manual corresponds to ID or verify number 114.

10. The description and labor codes used in each manual are substantially similar.

11. Substantial portions of the compiled labor units, are identical or virtually the same.[7]

The copying even went so far as to reproduce errors. On page 28.30 of Koontz 1979 manual (PX A11A), there is inserted for the voltage for the item with catalog no. 1104 the figure 120V. This figure should be 208–277 (PX B–13). Similarly, at the same page, Koontz inserted for the voltage for the item with catalog no. 7300L the figure 277V. This figure should be 120V. *Id.* The printout (PX A11C) at this page shows no voltage for either of these catalog numbers. Jaffarian's manual, however (PX A–16), shows 120V for the equivalent of catalog no. 1104 and 277V for the equivalent of

---

**7.** The language of the tabulation of similarities is taken from the plaintiff's proposed findings of fact, but coincides with the testimony at trial and an actual comparison of the manuals.

catalog no. 7300L, the same mistakes made in the Koontz manual but not reproduced in the printout. Consequently Jaffarian had to have used the Koontz manual for this copying.

While normally only circumstantial evidence of copying is present, in this case there is direct evidence that, in preparing his own manual in January 1983, Jaffarian did so by referring to the Koontz 1979 manual in producing a page by page display of the data base on the computer viewing screen, making some modifications from the 1979 data compilation given him by Labbie.[8] This evidence came from the witness Evans, a former employee of Jaffarian, and while her credibility was subjected to an attack for bias, the court found her testimony convincing. Jaffarian's testimony that he was only using a "cannibalized" version of a Koontz manual in accomplishing what Evans observed is unpersuasive.

That Labbie was in part the source of Jaffarian's copying and fully participated in it is amply supported by the evidence.

■ In sum, as to the copyright infringement claim, the court finds that the copyright on the 1979 manual, including the data compilation (Registration TX–431–204) is valid and infringed by the defendants. And because it is derivative of the 1975 manual which in turn is derivative of the 1974 manual, each being based on the next earlier work, the two early copyrights [Registration No. A511,454 (1974) and TX 1–433–354 (1975)[9] are also valid and infringed.

### Trade Secrets Misappropriation

■ While the court has held that what the plaintiff developed was copyrightable and copyrighted, it does not follow that

what was developed was a trade secret. The method by which Koontz developed and compiled his data was not secret. There was no process which was known only to him or a few confidants. His method, as he explained it on the witness stand, was to put down in tabular and coded form, on a unit and per foot basis, the labor pricing for installation of a particular item of electrical equipment. This he developed over the years from his experience and the experience of others. While not everyone, or even a substantial number of people, could do what he did, his method is a matter of public knowledge, not a secret. The computer program, qua program, was not developed by Koontz.

The trade secret misappropriation claim will be dismissed.

### Unfair Competition

■ This claim arises under § 43(a), of the Lanham Act, 15 U.S.C. § 1125(a),[10] and is directed at the advertisements and brochures disseminated by Jaffarian. Assertedly within the proscription of § 43(a) are the laudatory endorsements of Jaffarian which the plaintiffs say more properly apply to them, statements as to how the Jaffarian manual was developed, and statements as to the professional experience and background of Jaffarian. These are no more than "puffing" which are unlikely to mislead the public or damage the plaintiff. To the extent that the plaintiff's claims for unfair competition go beyond these enumerated activities, they are subsumed in the copyright infringement claim.

The unfair competition claim will be dismissed.

### Laches

■ The defendants devote a very minor portion of their brief to their defense

---

8. These modifications included placing title headings on all pages, changing prices of some labor units, and removing references to manufacturers' catalog numbers.

9. The first date of publication of what has been referred to as the 1975 manual was actually June 15, 1976. It also has registration Nos. TX 1–299–176 and TX 1–433–355.

10. Claims of common law unfair competition and violation of Va.Code § 18.2–216 (1982 Repl. Vol.) are included with the Lanham Act claim. The plaintiff does not assert that there is any difference in the elements of these claims from the Lanham Act claim.

of laches—this is understandable. There is no evidence that the plaintiff has slept on his rights. This action, filed in June 1984, was prompted by the April 1983 publication of the Jaffarian manual. This is not an undue delay. Nor, even with an awareness as early as 1981 that Labbie was continuing to use and market the plaintiff's data compilation, does there appear an unreasonable delay. Laches would not bar injunctive relief under the circumstances here in any event. *Cf. Rothman v. Greyhound Corporation,* 175 F.2d 893 (4th Cir. 1949). Nor, in the opinion of the court, would any delay equitably bar an award of damages not otherwise barred by the three year limitation imposed by 17 U.S.C. § 507(b). As stated before the defendants are not innocent infringers.

### Offer of Evidence

After trial the parties brought to the attention of the court that they had overlooked moving into evidence certain exhibits, PX G–1, H and I for the plaintiff, and DX 135, 136, 137 and 138 and a letter of April 17, 1985 from counsel for the defendants to counsel for the plaintiff. All are received in evidence.

▌ The plaintiffs devote a portion of their argument to "piercing the corporate veil." The court does not understand the defendants to contest that any relief awarded in the action should be awarded against not only the individuals but against the corporations under whose name the individuals trade. In any event, while the individuals, Jaffarian and Labbie, are the culpable defendants, they operate through corporations which they control, and which should be held liable to the same extent the individuals are held liable.

### Counterclaims

It follows from the foregoing that the defendants' counterclaims for a declaration of copyright invalidity and non-infringement must be denied. And since there has been shown no unfair competition by the plaintiffs or tortious interference with defendants' business relationship, the counterclaims for those torts will also be denied. Koontz's advice to IEC that if it purchased Jaffarian's manual for resale to its members it might be liable for copyright infringement was not tortious, it was correct.

### Relief

Counsel have not addressed in their post trial brief the issue of damages since, with the court's acquiscence, that issue was delayed to await a liability ruling. This now having occurred, counsel for the plaintiff should promptly prepare and forward for entry a form of injunction. Counsel for all parties should confer with a view to settlement of the damage issue. If this cannot be accomplished, counsel should submit their positions on the question of damages promptly, and in any event within two weeks of this date.

Appendix A - Jaffarian Manual

# WIREMOLD 500 & 700 FITTINGS & BOXES

PAGE 11.4    VERIFY NO.   70    CODE 1    WORK GROUP 26    LABOR GROUP 1 1

| | DESCRIPTION | ¶----LABOR   HOURS----¶ | | |
| | | CODE 2 | CODE 4 | CODE 6 |
|---|---|---|---|---|
| | WIREMOLD 500 & 700 FITTINGS | | | |
| 1 | 18" Flex Coupling | 0.05 | 0.06 | 0.08 |
| 3 | Coupling | 0.03 | 0.04 | 0.05 |
| 5 | Supporting Clip | 0.03 | 0.04 | 0.05 |
| 7 | Ground Clamp | 0.07 | 0.09 | 0.11 |
| 9 | Twisted Ell Right | 0.07 | 0.09 | 0.11 |
| 11 | Twisted Ell Left | 0.07 | 0.09 | 0.11 |
| 13 | Tee | 0.07 | 0.09 | 0.11 |
| 15 | Pull Box | 0.15 | 0.19 | 0.23 |
| 17 | Internal Elbow | 0.07 | 0.09 | 0.11 |
| 19 | Corner Box | 0.07 | 0.09 | 0.11 |
| 31 | Utility Box | 0.07 | 0.09 | 0.11 |
| 33 | Blank Cover | 0.07 | 0.09 | 0.11 |
| 35 | Outlet Box | 0.07 | 0.09 | 0.11 |
| 37 | Extension Box | 0.07 | 0.09 | 0.11 |
| 39 | Distribution Box | 0.07 | 0.09 | 0.11 |
| 51 | Sw & Recpt Box | 0.10 | 0.13 | 0.15 |
| 53 | Sp Switch W/Box | 0.25 | 0.31 | 0.38 |
| 55 | Duplex Recpt W/Box | 0.25 | 0.31 | 0.38 |
| 57 | Combination Box | 0.07 | 0.09 | 0.11 |
| | DEEP SWITCH BOXES | | | |
| 59 | 1 Gang | 0.10 | 0.13 | 0.15 |
| 71 | 2 Gang | 0.10 | 0.13 | 0.15 |
| 73 | 3 Gang | 0.10 | 0.13 | 0.15 |
| | SHALLOW SWITCHES BOXES | | | |
| 75 | 1 Gang | 0.10 | 0.13 | 0.15 |
| 77 | 2 Gang | 0.10 | 0.13 | 0.15 |
| 79 | 3 Gang | 0.10 | 0.13 | 0.15 |
| 91 | 4 Gang | 0.10 | 0.13 | 0.15 |
| 93 | 5 Gang | 0.10 | 0.13 | 0.15 |
| 95 | 6 Gang | 0.10 | 0.13 | 0.15 |
| | EXTENSION ADAPTERS | | | |
| 97 | 1 Gang | 0.10 | 0.13 | 0.15 |
| 99 | 2 Gang | 0.10 | 0.13 | 0.15 |
| 101 | 3 Gang | 0.10 | 0.13 | 0.15 |
| 103 | 4 Gang | 0.12 | 0.15 | 0.18 |
| 105 | 5 Gang | 0.15 | 0.19 | 0.23 |
| 107 | 6 Gang | 0.20 | 0.25 | 0.30 |
| | MISCELLANEOUS | | | |
| 109 | Bender | 0.00 | 0.00 | 0.00 |
| 111 | Cutting Box | 0.00 | 0.00 | 0.00 |
| 113 | Wire Pulley | 0.00 | 0.00 | 0.00 |
| 115 | Snake Leader | 0.00 | 0.00 | 0.00 |
| 117 | Canopy Cutter | 0.00 | 0.00 | 0.00 |
| 119 | Spray Paint | 0.00 | 0.00 | 0.00 |

Appendix B – 1975 – Koontz Manual

| SURFACE METAL RACEWAY. WIREMOLD 500 & 700 FITTINGS. | | | | | | | 11.4 |
|---|---|---|---|---|---|---|---|
| ILLUSTRATION | CATALOGUE NO. | PRICE | CODE NO. | MATERIAL — DESCRIPTION | 2 GROUND | LABOR MAN HOURS 4 LADDER | 6 SCAFFOLD |
| | WIREMOLD | | | WIREMOLD 500 & 700 FITTINGS | | | |
| | 5700F | 5.24 ea | 1 | 18" Flexible Fitting | .05 ea. | .07 ea. | .10 ea |
| | 5701 | .07 ea | 3 | Coupling | .03 ea | .05 ea | .07 ea |
| | 5703 | .08 ea | 5 | Supporting Clip | .03 ea | .05 ea | .07 ea |
| | 5708 | 1.80 ea | 7 | Fixture Hook | .07 ea | .09 ea | .12 ea |
| | 5709 | .95 ea | 9 | Ground Clamp | .07 ea | .09 ea | .12 ea |
| | 5711RH | 1.16 ea | 11 | Internal Twisted Elbow. Right | .07 ea | .09 ea | .12 ea |
| | 5711LH | 1.16 ea | 13 | Internal Twisted Elbow. Left | .07 ea | .09 ea | .12 ea |
| | 5715 | 1.10 ea | 15 | Tee | .07 ea | .09 ea | .12 ea |
| | 5717A | 2.56 ea | 17 | Internal Pull Elbow | .07 ea | .09 ea | .12 ea |
| | 5721 | 1.87 ea | 19 | Utility Box | .07 ea | .09 ea | .12 ea |
| | 5719 | 3.10 ea | 31 | Corner Box | .07 ea | .09 ea | .12 ea |
| | 5719D | 2.10 ea | 33 | Corner Box | .07 ea | .09 ea | .12 ea |
| | 5726P | 4.16 ea | 35 | Keyless Receptacle | .20 ea | .25 ea | .30 ea |
| | 5731 | .78 ea | 37 | Blank Cover | .07 ea | .07 ea | .09 ea |
| | 5733 | 2.45 ea | 39 | Outlet Box | .07 ea | .09 ea | .12 ea |
| | 5734 | 2.35 ea | 51 | Blank Extension Box | .07 ea | .09 ea | .12 ea |
| | 5734A | 2.25 ea | 53 | Utility Box | .07 ea | .09 ea | .12 ea |
| | 5735 | 3.25 ea | 55 | Distribution Box | .07 ea | .09 ea | .12 ea |
| | 5736 | 1.05 ea | 57 | Blank Cover | .05 ea | .07 ea | .10 ea |
| | 5738F | 1.36 ea | 59 | Grounding Box | .10 ea | .12 ea | .15 ea |
| | 5735 | 2.85 ea | 71 | Extension Box ( 4 3/4" ) | .10 ea | .12 ea | .15 ea |
| | 5737A | 2.40 ea | 73 | Extension Box ( 5 1/2" ) | .10 ea | .12 ea | .15 ea |
| | 5738 | 2.45 ea | 75 | Fixture Box ( 4 3/4" ) | .10 ea | .12 ea | .15 ea |
| | 5738A | 2.05 ea | 77 | Fixture Box ( 5 1/2" ) | .10 ea | .12 ea | .15 ea |
| | 5739 | 2.45 ea | 79 | Fixture Box | .10 ea | .12 ea | .15 ea |
| | 5739A | 2.75 ea | 91 | Extension Box | .07 ea | .09 ea | .12 ea |
| | 57240 | 3.25 ea | 93 | Single Pole Switch & Box | .25 ea | .30 ea | .35 ea |
| | 5741 | 2.05 ea | 95 | Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 57242 | 2.25 ea | 97 | Utility Box | .07 ea | .09 ea | .12 ea |
| | 57234G | 4.05 ea | 99 | Duplex Receptacle & Box | .25 ea | .30 ea | .35 ea |
| | 5744 | 3.35 ea | 101 | 1G.Extra Deep Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5744-2 | 5.00 ea | 103 | 2G.Extra Deep Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5744-3 | 8.15 ea | 105 | 3G.Extra Deep Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5745 | 1.90 ea | 107 | Combination Switch & Recept. Box | .10 ea. | .12 ea | .15 ea |
| | 5760 | 1.75 ea | 109 | Blank Extension Box | .07 ea | .09 ea | .12 ea |
| | 5744S | 4.70 ea | 111 | 1G.Deep Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5744S2 | 6.10 ea | 113 | 2G.Deep Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5744S3 | 10.00 ea | 115 | 3G.Deep Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748S | 1.65 ea | 117 | Shallow Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5749 | 4.05 ea | 119 | Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747 | 1.62 ea | 131 | 1G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-2 | 3.25 ea | 133 | 2G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-3 | 6.10 ea | 135 | 3G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-4 | 9.70 ea | 137 | 4G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-5 | 12.70 ea | 139 | 5G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-6 | 16.85 ea | 151 | 6G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748 | 1.80 ea | 153 | 1G.Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748-2 | 3.40 ea | 155 | 2G.Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748-3 | 6.30 ea | 157 | 3G.Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748-4 | 9.75 ea | 159 | 4G.Switch & Receptacle Box | .12 ea | .14 ea | .17 ea |
| | 5748-5 | 12.85 ea | 171 | 5G.Switch & Receptacle Box | .15 ea | .17 ea | .20 ea |
| | 5748-6 | 15.60 ea | 173 | 6G.Switch & Receptacle Box | .20 ea | .22 ea | .25 ea |
| | 5751 | 1.75 ea | 175 | 1G.Flush Extension Adapter | .10 ea | .12 ea | .15 ea |
| | 5751-2 | 3.50 ea | 177 | 2G.Flush Extension Adapter | .10 ea | .12 ea | .15 ea |
| | 5751-3 | 7.50 ea | 179 | 3G.Flush Extension Adapter | .10 ea | .12 ea | .15 ea |
| | 5751-4 | 10.95 ea | 191 | 4G.Flush Extension Adapter | .12 ea | .15 ea | .17 ea |
| | 5751-5 | 17.00 ea | 193 | 5G.Flush Extension Adapter | .15 ea | .17 ea | .20 ea |
| | 5751-6 | 19.40 ea | 195 | 6G.Flush Extension Adapter | .20 ea | .22 ea | .25 ea |

Appendix C – 1979 – Koontz Manual

| | | | | | LABOR MAN HOURS | | |
|---|---|---|---|---|---|---|---|
| SURFACE METAL RACEWAY. WIREMOLD 500 & 700 FITTINGS. | | | | | 11.4 | | |
| ILLUSTRATION | CATALOGUE NO | PRICE | CODE NO | DESCRIPTION | 2 GROUND | 4 LADDER | 6 SCAFFOLD |
| | WIREMOLD | | | WIREMOLD 500 & 700 FITTINGS | | | |
| | 5700F | | 1 | 18" Flexible Fitting | .05 ea | .07 ea, | .10 ea |
| | 5701 | | 3 | Coupling | .03 ea | .05 ea | .07 ea |
| | 5703 | | 5 | Supporting Clip | .03 ea | .05 ea | .07 ea |
| | 5708 | | 7 | Fixture Hook | .07 ea | .09 ea | .12 ea |
| | 5709 | | 9 | Ground Clamp | .07 ea | .09 ea | .12 ea |
| | 5711RH | | 11 | Internal Twisted Elbow. Right | .07 ea | .09 ea | .12 ea |
| | 5711LH | | 13 | Internal Twisted Elbow. Left | .07 ea | .09 ea | .12 ea |
| | 5715 | | 15 | Tee | .07 ea | .09 ea | .12 ea |
| | 5717A | | 17 | Internal Pull Elbow | .07 ea | .09 ea | .12 ea |
| | 5721 | | 19 | Utility Box | .07 ea | .09 ea | .12 ea |
| | 5719 | | 31 | Corner Box | .07 ea | .09 ea | .12 ea |
| | 5719D | | 33 | Corner Box | .07 ea | .09 ea | .12 ea |
| | 5726P | | 35 | Keyless Receptacle | .20 ea | .25 ea | .30 ea |
| | 5731 | | 37 | Blank Cover | .07 ea | .07 ea | .09 ea |
| | 5733 | | 39 | Outlet Box | .07 ea | .09 ea | .12 ea |
| | 5734 | | 51 | Blank Extension Box | .07 ea | .09 ea | .12 ea |
| | 5734A | | 53 | Utility Box | .07 ea | .09 ea | .12 ea |
| | 5735 | | 55 | Distribution Box | .07 ea | .09 ea | .12 ea |
| | 5736 | | 57 | Blank Cover | .05 ea | .07 ea | .10 ea |
| | 5738F | | 59 | Grounding Box | .10 ea | .12 ea | .15 ea |
| | 5735 | | 71 | Extension Box ( 4 3/4" ) | .10 ea | .12 ea | .15 ea |
| | 5737A | | 73 | Extension Box ( 5 1/2" ) | .10 ea | .12 ea | .15 ea |
| | 5738 | | 75 | Fixture Box ( 4 3/4" ) | .10 ea | .12 ea | .15 ea |
| | 5738A | | 77 | Fixture Box ( 5 1/2" ) | .10 ea | .12 ea | .15 ea |
| | 5739 | | 79 | Fixture Box | .10 ea | .12 ea | .15 ea |
| | 5739A | | 91 | Extension Box | .07 ea | .09 ea | .12 ea |
| | 57240 | | 93 | Single Pole Switch & Box | .25 ea | .30 ea | .35 ea |
| | 5741 | | 95 | Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 57242 | | 97 | Utility Box | .07 ea | .09 ea | .12 ea |
| | 57234G | | 99 | Duplex Receptacle & Box | .25 ea | .30 ea | .35 ea |
| | 5744 | | 101 | 1G.Extra Deep Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5744-2 | | 103 | 2G.Extra Deep Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5744-3 | | 105 | 3G.Extra Deep Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5745 | | 107 | Combination Switch & Recept. Box | .10 ea. | .12 ea | .15 ea |
| | 5760 | | 109 | Blank Extension Box | .07 ea | .09 ea | .12 ea |
| | 5744S | | 111 | 1G.Deep Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5744S2 | | 113 | 2G.Deep Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5744S3 | | 115 | 3G.Deep Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748S | | 117 | Shallow Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5749 | | 119 | Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747 | | 131 | 1G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-2 | | 133 | 2G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-3 | | 135 | 3G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-4 | | 137 | 4G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-5 | | 139 | 5G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5747-6 | | 151 | 6G.Shallow Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748 | | 153 | 1G.Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748-2 | | 155 | 2G.Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748-3 | | 157 | 3G.Switch & Receptacle Box | .10 ea | .12 ea | .15 ea |
| | 5748-4 | | 159 | 4G.Switch & Receptacle Box | .12 ea | .14 ea | .17 ea |
| | 5748-5 | | 171 | 5G.Switch & Receptacle Box | .15 ea | .17 ea | .20 ea |
| | 5748-6 | | 173 | 6G.Switch & Receptacle Box | .20 ea | .22 ea | .25 ea |
| | 5751 | | 175 | 1G.Flush Extension Adapter | .10 ea | .12 ea | .15 ea |
| | 5751-2 | | 177 | 2G.Flush Extension Adapter | .10 ea | .12 ea | .15 ea |
| | 5751-3 | | 179 | 3G.Flush Extension Adapter | .10 ea | .12 ea | .15 ea |
| | 5751-4 | | 191 | 4G.Flush Extension Adapter | .12 ea | .15 ea | .17 ea |
| | 5751-5 | | 193 | 5G.Flush Extension Adapter | .15 ea | .17 ea | .20 ea |
| | 5751-6 | | 195 | 6G.Flush Extension Adapter | .20 ea | .22 ea | .25 ea |