787 F.2d 906
 54 USLW 2571, 229 U.S.P.Q. 381, 1986
Copr.L.Dec. P 25,919
 Dennis W. KOONTZ, Master Service Corp., and Jean M. Koontz, Appellees,
v.
Richard JAFFARIAN and Richard Jaffarian Associates, Inc., Appellants,
and
G. Labbie Ltd., Glen Labbie, and G.L. Systems, Ltd., Defendants.
 No. 85-1765.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 8, 1986.
Decided March 31, 1986.
 
 A.W. Breiner (Theodore A. Breiner, Breiner & Breiner, Alexandria, Va., on brief), for appellants.
 David A. Blumenthal (Peter G. Mack, Schwartz, Jeffery, Schwaab, Mack, Blumenthal & Evans, P.C., Alexandria, Va., on brief), for appellees.
 Before WINTER, Chief Judge, and SPROUSE and CHAPMAN, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 Richard Jaffarian and Richard Jaffarian Associates, Inc. (Jaffarian) appeal from the district court's judgment awarding damages and injunctive relief to Dennis W. Koontz and his wholly-owned Master Service Corporation (Koontz) for copyright infringement. Koontz prepared and copyrighted a manual containing a compilation of data for estimating bids for electrical construction contracts. In conjunction with others, he later transferred the data compilation onto computer tapes not containing a notice of copyright. Jaffarian admittedly took Koontz's data from the computer tapes and used it to prepare his own electrical estimating manual. Jaffarian contends, however, that Koontz did not own the data compilation on the computer tapes and that the district court erred in extending copyright protection to the tapes under the "unit publication" rule. We affirm.
 
 
 2
 The district court's findings of fact were detailed and cogent. Koontz v. Jaffarian, 617 F.Supp. 1108 (E.D.Va.1985). They provide the background against which we uphold the validity of the "unit publication" rule and agree that Koontz's copyright has been infringed. Koontz has been in the business of preparing estimates for electrical contractors for twenty-five to thirty years--providing the contractors with approximate costs for materials and labor on proposed construction jobs. There are numerous manuals available to assist in preparing such estimates, but in 1962, Koontz began creating his own. His first manual was published in 1968 and is not involved in this controversy. Koontz published an updated version of the manual in 1974. It was in two volumes, and its copyright was registered in the same year.
 
 
 3
 The heart of Koontz's manual is a comprehensive data compilation of labor units--a listing of over 57,000 items used in electrical construction showing the price of each item and amount of time necessary to install it. Prior to 1976, Koontz prepared estimates with his manual by hand. Using the construction plans, he would first determine the various materials needed to complete the job. He would then go through his manual and assign code numbers, page numbers, and quantities for each item. Koontz gave this information to his secretary, who added up the cost and labor hours listed in the manual for each item to come up with a final estimate.
 
 
 4
 In February 1976, Koontz entered into an agreement with Hewlett-Packard Company (H-P) to develop a computerized version of his electrical estimating system. Koontz agreed to provide H-P with the mathematical algorithms and the data compilation used to prepare estimates. H-P agreed to develop a computer program so that the information Koontz had formerly given to his secretary could be entered into a computer which would then calculate the final estimate. Koontz also agreed to supply H-P with his manuals, which H-P would in turn supply to each customer who purchased the electrical estimating package. By this time, Koontz had updated and revised his two volume 1974 manual, producing a one volume 1975 version, known as the MCP-5. H-P agreed to pay Koontz a $3,000 fee, plus $250 for every manual supplied to a customer.
 
 
 5
 Koontz worked with an H-P programmer and provided the procedural, step-by-step information needed to write the electrical estimating computer program. The program and significant portions of the data compilation from Koontz's 1975 manual were then stored on magnetic tape. The program and the data compilation as stored together on the tape made up what is referred to as the electrical estimating "software." With this software and Koontz's manual, a customer could obtain an estimate using an H-P computer (the "hardware") in the same way Koontz had obtained estimates by hand. After determining the various items needed for a job, the customer would look up each item in Koontz's manual. The customer would then enter the code number, page number, and quantity of each item into the computer. The computer would perform the calculations previously done by Koontz's secretary and print out the final estimate.
 
 
 6
 H-P marketed this product as an electrical estimating package which included Koontz's 1975 MCP-5 manual, the magnetic tapes containing the program and the data compilation, and an instruction book written by H-P. Although Koontz's 1975 MCP-5 manual contained a copyright notice, there was no copyright notice on the magnetic tapes or in the program or the data compilation stored on the tapes. Koontz registered a copyright in the 1975 MCP-5 manual and in the data compilation stored on the magnetic tapes together as a "unit publication" on November 8, 1984.[1]
 
 
 7
 Koontz and H-P terminated their relationship in 1977 after attempts to market the electrical estimating package were largely unsuccessful. Koontz then formed a joint venture with Glen Labbie to improve the package. After Labbie obtained a master copy of the electrical estimating software from H-P, Koontz and Labbie made improvements in the program. In addition, Koontz updated the data compilation contained in the software with current price and labor information. Koontz and Labbie sold this updated software together with Koontz's MCP-5 manual as an improved electrical estimating package. In 1979, Koontz again updated the software data compilation. He also published another updated version of his accompanying manual, the 1979 MCP-5. Like his 1975 manual, Koontz's 1979 MCP-5 manual contained a valid copyright notice. The software, however, still failed to include a separate copyright notice. Koontz registered a copyright on the 1979 MCP-5 manual and the updated software together as a "unit publication" on November 2, 1984.[2]
 
 
 8
 Jaffarian performed electrical estimating work for Koontz from 1975 to 1976. He worked for Koontz again from 1978 to 1979, during which time he met Labbie. After terminating their relationships with Koontz, Jaffarian and Labbie began working together in 1982 to create an electrical estimating package to compete with Koontz's package. Labbie supplied Jaffarian with a copy of the electrical estimating software as updated by Labbie and Koontz in 1979. Jaffarian admits that he used his computer to print out the data compilation supplied by Koontz and stored in the software. Jaffarian then used this computer-generated data compilation to develop his own manual. There was also testimony, which Jaffarian denied, that he copied directly from the data base contained in Koontz's 1975 MCP-5 manual while preparing his own manual. When Jaffarian finally published his manual, it contained a data base substantially similar to the one in Koontz's MCP-5 manual.
 
 
 9
 Koontz brought this action in the district court against Jaffarian and Labbie[3] for copyright infringement, trade secret misappropriation, and unfair competition. The defendants filed a counterclaim for a declaration of copyright invalidity and noninfringement, unfair competition, and tortious interference with the defendants' business relations. After a bench trial, the district court dismissed all of the claims except for Koontz's infringement claim. It held that Koontz's copyrights were valid and had been infringed by the defendants. Jaffarian appeals the district court's judgment of copyright infringement.
 
 
 10
 Jaffarian first contends that Koontz's asserted copyright in the data compilation contained in the software is invalid because Koontz does not own the rights to that data compilation. 17 U.S.C. Sec. 408 (1982). He asserts that Koontz transferred his rights to the data compilation contained in the software to H-P under their 1976 agreement. The district court, however, carefully analyzed the agreement and the conflicting testimony relating to the intent of the parties to the agreement and found, as a matter of fact, that Koontz did not transfer his rights in the data compilation contained in the software to H-P. Koontz, 617 F.Supp. at 1113. After reviewing the record, we are convinced that the district court's finding is not clearly erroneous. Anderson v. City of Bessemer City, --- U.S. ----, 105 S.Ct. 1504, 1510-11, 84 L.Ed.2d 518 (1985).
 
 
 11
 Jaffarian also argues that he was free to copy from Koontz's data compilation contained in the software because there was no copyright notice on the software as required by 17 U.S.C. Sec. 401 (1982). The district court, relying on the unit publication doctrine, held that the copyright notice affixed to Koontz's 1975 and 1979 MCP-5 manuals acted to protect both the manuals and the software. Jaffarian urges us to reject that doctrine as having no inherent legal validity or, alternatively, as being inapplicable to the facts of this case.
 
 
 12
 Courts adhering to the unit publication doctrine hold that copyright notice affixed "to one element of a publication containing various elements gives copyright protection to all elements of the publication." Koontz, 617 F.Supp. at 1112. Although the doctrine has not previously been considered by this court, it has been employed in a variety of circumstances by other courts of appeals. Monogram Models, Inc. v. Industro Motive Corp., 492 F.2d 1281, 1284-85 (6th Cir.), cert. denied, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974); Uneeda Doll Co. v. Goldfarb Novelty Co., 373 F.2d 851, 853-54 (2d Cir.1967); Lydiard-Peterson Co. v. Woodman, 204 F. 921 (8th Cir.1913); see also Data Cash Systems, Inc. v. JS & A Group, Inc., 628 F.2d 1038, 1041 (7th Cir.1980) (dicta); 2 Nimmer, The Law of Copyright Sec. 7.10[D] (1984). In proper circumstances, linked elements of a publication should be collectively protected, and we agree with the district court that the unit publication doctrine should apply where, as here, the elements of the publication form a single commercial unit. See 2 Nimmer, supra at Sec. 7.10[D].
 
 
 13
 Although the manual and the software containing the data compilation were not physically connected, the district court found that:
 
 
 14
 [t]he software, hardware and a manual were always sold, and intended to be sold as a unit. While the manual could be sold separately, the software, including the tapes, were not sold without a manual.... [and] the court finds that the average customer could not use the software without a manual. The manual was, for all intents and purposes, the instruction sheet for the use of the software.
 
 
 15
 Koontz, 617 F.Supp. at 1112. Once again, we cannot say that this finding is clearly erroneous.
 
 
 16
 As the district court noted, the basic purpose of copyright notice is to protect innocent infringers, a concern not present in the instant controversy. Both Jaffarian and Labbie knew that the data compilation on the software was derived from Koontz's manual. Jaffarian, in fact, was sufficiently concerned to obtain legal advice, which was to the effect that he was free to use the data compilation on the software. Regardless, these defendants were "not innocents misled by any omission of a copyright notice on the software." Koontz, 617 F.Supp. at 1112-13. The application of the unit publication doctrine under these circumstances is inherently fair, and we affirm the district court's finding that Koontz's data compilation contained in the software was entitled to copyright protection.
 
 
 17
 We similarly affirm the district court's judgment that Jaffarian infringed on Koontz's copyrighted works. The court compared Jaffarian's manual with Koontz's manual and with Koontz's data compilation on the software. It considered all the evidence relating to Jaffarian and Labbie's access to Koontz's works, the working relationship of the parties, and the great similarity between all of the works, which extended even to the reproduction of errors. This evidence, which is set forth in detail in the district court's opinion, Koontz, 617 F.Supp. at 1113-15, is more than sufficient to support a finding of copyright infringement.
 
 
 18
 We have considered the other points raised by Jaffarian and found them without merit. The judgment of the district court, therefore, is affirmed.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Koontz registered his copyright in the 1975 manual and the data on the tapes as a derivative work based on his 1974 manual. In the copyright application, he claimed a copyright in the "[r]evision and expansion of first 1/3 of manual and revision of compilation of data base information appearing in the manual and stored on magnetic tapes, the manual and tapes published together as a unit publication."
 
 
 [2]
 Koontz registered his copyright in the 1979 manual and the updated software as a derivative work based on the 1975 manual and software. In the copyright application, he claimed a copyright in the "[r]evision of manual; addition of last 1/2 of program and revision of compilation of data base information both in manual and disk, the disk and manual being published as a unit publication."
 
 
 [3]
 In addition to Labbie, the complaint named Labbie's companies G.L. Labbie, Ltd. and G.L. Systems as defendants. Neither Labbie nor his companies are parties to the instant appeal