Irena NARELL, Plaintiff–Appellant,

v.

Cynthia FREEMAN, aka Bea Fineberg, G.P. Putnam's Sons, Berkeley Publishing Corp., Defendants–Appellees.

No. 88–2491.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 1989.

Decided April 17, 1989.

908

Daniel H. Bookin, Farella, Braun & Martel, San Francisco, Cal., for Irena Narell, plaintiff-appellant.

Charles D. Chalmers, Feldman, Waldman & Kline, San Francisco, Cal., for Cynthia Freeman.

Jessica Pers, D. Christopher Kerby, Stephen Bomse, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for G.P. Putnam's Sons and Berkeley Pub. Corp., defendants-appellees.

Before SKOPIL, FARRIS and HALL, Circuit Judges.

FARRIS, Circuit Judge:

Irena Narell appeals the district court's grant of summary judgment to Cynthia Freeman, G.P. Putnam's Sons, and Berkeley Publishing in this copyright infringement action. Narell claims that in writing *Illusions of Love*, Freeman copied substantial portions of Narell's *Our City: The Jews of San Francisco*. We affirm the grant of summary judgment.

## BACKGROUND

*Our City: The Jews of San Francisco*, written by Narell, was published in 1981 by Howell–North Books, a wholly-owned subsidiary of Oak Tree Publications. The book details the movement of Jewish immigrants from Europe to California, the creation and development of businesses, involvement in civic and cultural affairs, and family histories and social events. As described in its inside book flap: "*Our City* is both a stunning social history and penetrating mass biography of the Jewish families who since gold-rush days have left their mark on virtually every facet of Bay Area life [and] is the product of prodigious scholarship...." The large, well-illustrated, annotated book is written in an anecdotal, narrative style, and carries a cover price of $25. In 1986, Narell repurchased the rights to the book and the remaining inventory, about 2,200 copies of the initial 1981 printing. Less than 5,000 copies of the book have been sold or distributed to date.

*Illusions of Love*, written by Freeman, was published by G.P. Putnam's Sons in hardcover in 1984 (now out of print) and by Berkeley Publishing in paperback in 1986.

The book has sold approximately one million copies in a variety of locales from bookstores to supermarkets. It is rack-sized and carries a cover price of $4.95. The book tells the fictional story of the conflict experienced by the heir of a large, wealthy Jewish family. He must choose between his obligations to his wife and family and his passion for a rediscovered former lover from a vastly different background. As described on its book flap:

Sweeping from lavish San Francisco mansions to the devastated villages of war-torn Italy to the swank clubs and glittering thoroughfares of postwar Manhattan to today, *Illusions of Love* is the unforgettable story of a romantic triangle that spans a quarter of a century.

Portions of *Illusions* are based on historical events described in portions of *Our City*. Freeman admits that she consulted and used Narell's work during her preparation of *Illusions*.

Narell filed suit in July 1987 alleging violation of the Copyright Act, 17 U.S.C. §§ 101–810. As the basis for her infringement claim, Narell points to several instances of word-for-word copying and many more instances of paraphrasing. The total copying is estimated to be over 300 words.

On March 18, 1988, the district court granted the defendants' motion for summary judgment on the alternative grounds that (1) the copyright was not infringed because the works are not substantially similar and (2) the use of Narell's material in *Illusions* is protected by the fair use doctrine.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 346 (1987). Although summary judgment is not highly favored on questions of substantial similarity in copyright cases, summary judgment is appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the non-moving party, that no

reasonable juror could find substantial similarity of ideas and expression. *Frybarger v. International Business Machines Corp.*, 812 F.2d 525, 528 (9th Cir.1987). We frequently have affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity. *Worth v. Selchow & Righter*, 827 F.2d 569, 571 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1271, 99 L.Ed.2d 482 (1988) (citing cases). Fair use is a mixed question of law and fact that may be resolved on summary judgment if a reasonable trier of fact could reach only one conclusion. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1150–51 (9th Cir.1986). We may affirm a judgment on any ground fairly supported by the record. *DeNardo v. Murphy*, 781 F.2d 1345, 1347 (9th Cir.), *cert. denied*, 476 U.S. 1111, 106 S.Ct. 1962, 90 L.Ed.2d 648 (1986).

### DISCUSSION

■ To establish a successful copyright infringement claim, Narell must show that she owns the copyright and that Freeman copied protected elements of the work. *Baxter*, 812 F.2d at 423. Because in most copyright cases direct evidence of copying is not available, a plaintiff may establish copying by showing that the infringer had access to the work and that the two works are substantially similar. *Id.* Narell's ownership of the copyright and Freeman's access to Narell's work are not in dispute.

### A. *Copying*

Narell argues that this is the rare case where direct evidence of copying exists. In response to questioning during a deposition, Freeman admitted consulting Narell's book during her research and taking "language" from it. As Narell's attorney pointed out particular portions of *Illusions*, he asked Freeman, "did some of the language come from Ms. Narell's book?" Freeman answered "possibly, probably ... undoubtedly, possibly, I don't know ... of course ... some of it, sure ... yes...." Freeman's halting admissions do not resolve the question. *Cf. Broderbund Software, Inc. v. Unison World, Inc.*, 648

F.Supp. 1127, 1135 (N.D.Cal.1986) (finding direct evidence of copying where programmers carried out orders to copy plaintiff's program). The underlying question is whether *protected* elements of Narell's book were copied. *See Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 n. 3 (9th Cir.1970) (non-protected material may be copied with impunity); *cf. Broderbund*, 648 F.Supp. at 1131–34 (determining that audiovisual displays of computer program are protected by copyright law).

A finding that a defendant copied a plaintiff's work, without application of a substantial similarity analysis, has been made only when the defendant has engaged in virtual duplication of a plaintiff's entire work. *See M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 428 (4th Cir.1986) (computer video game); *United Telephone Co. of Mo. v. Johnson Publishing Co.*, 671 F.Supp. 1514, 1521 (W.D.Mo.1987), *aff'd*, 855 F.2d 604 (8th Cir.1988) (telephone directory); *Broderbund*, 648 F.Supp. at 1135 (computer program); *Koontz v. Jaffarian*, 617 F.Supp. 1108, 1113–15 (E.D. Va.1985), *aff'd*, 787 F.2d 906 (4th Cir.1986) (electrical estimating labor manual); *Radji v. Khakbaz*, 607 F.Supp. 1296, 1299–1300 (D.D.C. 1985) (book excerpts in newspaper); *see also Wainwright Securities, Inc. v. Wall St. Transcript Corp.*, 558 F.2d 91, 95 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978) (abstracts of financial research reports). In those cases, a substantial similarity analysis was unnecessary because the copying of the substance of the entire work was admitted. The infringement issue turned on whether the material copied constituted protected expression. The question here is whether Freeman's admitted takings—several instances of identical phrases and the more numerous paraphrases—were of protected material.

■ Copyright law protects only an author's expression. Facts and ideas within a work are not protected. *Harper & Row, Publishers v. Nation Enterprises*, 471 U.S. 539, 547–48, 105 S.Ct. 2218, 2223–24, 85 L.Ed.2d 588 (1985). Historical facts and

theories may be copied, as long as the defendant does not "bodily appropriate" the expression of the plaintiff. *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 489 (9th Cir.1984), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984), (quoting *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 980 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980)); *see also Worth,* 827 F.2d at 573–74 (research not protected). "[T]he scope of copyright in historical accounts is narrow indeed, embracing no more than the author's original expression of particular facts and theories already in the public domain." *Hoehling,* 618 F.2d at 974.

■ Examining Narell's list of copied passages shows that Freeman largely took unprotected factual information from *Our City:* the reasons for Jewish emigration from nineteenth century Europe to the United States and the hardships of the emigrants' sea crossing; the details of Adolph Sutro's journey from Westphalia via Panama to California; the character of mid-nineteenth century San Francisco streets; and the conduct of religious affairs and social relations within the Jewish community, including the occurrence and guest list of a picnic attended by leading families. Freeman did copy a few phrases from Narell: "rekindle old memories," "staggering network," "river wound its way between muddy banks crawling with alligators," "hordes of gold seekers," "pitched overboard," "cow path," "shanties and corrugated [iron/steel] shacks ... were crowded together," and "beach was strewn with boxes, bales."

■ Ordinary phrases are not entitled to copyright protection. *Alberto–Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 711 (7th Cir.1972) (denying protection to advertising phrase "most personal sort of deodorant"); *see Hoehling,* 618 F.2d at 979 (random duplications of phrases not infringement); 1 M. Nimmer, *Nimmer on Copyright* § 2.11[B] at 2–160 (1988) (for factual work to be accorded protection, form of expression must evidence originality); *cf. Salinger v. Random House,* 811 F.2d 90,

98–99 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987) (finding highly original expressions infringed by paraphrases; e.g., writing of Wendell Wilkie, Salinger's statement "He looks to me like a guy who makes his wife keep a scrapbook for him" paraphrased by infringer as "[Salinger] had fingered [Wilkie] as the sort of fellow who makes his wife keep an album of his press clippings." *Id.* at 93, n. 2). *See generally* B. Kaplan, *An Unhurried View of Copyright* 46 (1967) (allowing copyright to small groups of words could set up barrier to expression). Phrases and expressions conveying an idea typically expressed in a limited number of stereotyped fashions are not subject to copyright protection. *Perma Greetings, Inc. v. Russ Berrie & Co.,* 598 F.Supp. 445, 448 (E.D.Mo.1984); *Alexander v. Haley,* 460 F.Supp. 40, 46 (S.D.N.Y.1978). Similarly, stock scenes containing little in the way of original expression are not protected. *See v. Durang,* 711 F.2d 141, 143 (9th Cir.1983).

Most of the phrases Freeman copied from Narell are commonly-used expressions, such as describing a group of family relationships as a "staggering network," a muddy street as a "cow path" or a river bank populated by sluggish, broad-headed loricates as "crawling with alligators." Although one may conclude that Freeman appropriated Narell's historical research, the appropriation of expressive elements is minimal. The more numerous paraphrasings cited by Narell cannot be said to take the expressive elements of her work; instead, unprotected factual details are taken, although in some cases commonly-used expressions are echoed, such as "mosquitos ravished his flesh" versus "mosquitos feasted on his flesh." *Cf.* F. Zappa & the Mothers of Invention, *Weasels Ripped My Flesh* (1970) (sound recording title) (example of original and hence protected phrase). Freeman's borrowings did not take a "sequence of creative expression," as opposed to an ordinary phrase, and therefore were not infringing. *See Salinger,* 811 F.2d at 98.

Narell argues that Freeman copied the expressive elements of *Our City* as well as its facts. During argument, Narell's counsel quoted the following lines to support the point that an author can describe history expressively:

Listen, my children, and you shall hear
Of the midnight ride of Paul Revere,
On the eighteenth of April, in Seventy-five;
Hardly a man is now alive
Who remembers that famous day and year.

H. Longfellow, *The Landlord's Tale (Paul Revere's Ride)*, in *Poems of Henry Wadsworth Longfellow* 310 (L. Untermeyer ed. 1943) (originally published 1863). Although we agree that the direct copying of all of the above lines, or even of the first two lines, might constitute infringement if the original held a valid copyright registration, the case presented here is not identical. The question is whether Freeman has taken more than facts or ordinary phrases. Freeman has not copied the equivalent of a unique line or stanza, but has duplicated a few ordinary phrases and paraphrased largely factual statements in creating an entirely different kind of story. A paraphrased story using some of Longfellow's words would not necessarily infringe Longfellow's poem merely because it used details of Paul Revere's ride and duplicated a phrase or two.

The facts of Adolph Sutro's journey from Europe to San Francisco, including his encounters with mosquitos and alligators, are available for the use of any author. Freeman has taken facts and ordinary phrases from Narell, but she has not taken protected expression from Narell. A reasonable juror could not conclude that Freeman copied protected expression from Narell.

Our determination that no protected expression was copied is a sufficient basis for affirming the summary judgment. However, the arguments of the parties and the decision of the district court focused on the issues of substantial similarity and fair use. We address those issues because they were the focus of the matter before the district court and because they offer additional support for our holding.

### B. *Substantial Similarity*

The Ninth Circuit's two-part method for determining substantial similarity is composed of an objective, extrinsic test and a subjective, intrinsic test. *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir.), *cert. denied*, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed. 2d 69 (1985).

### 1. The Extrinsic Test

■ The extrinsic test determines whether the two works are substantially similar in general ideas and compares the individual features of the works to find specific similarities between the plot, theme, dialogue, mood, setting, pace, characters, and sequence of events. *Id.* The test focuses not on basic plot ideas, which are not protected by copyright, but on "the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Id.* at 1293.

■ Viewed as a whole, the basic elements of the two works have slight resemblance to one another. *Illusions* is a romance novel, largely focused on the thoughts, feelings, and actions of three fictional characters. *Our City* is a historical treatment of the Bay Area Jewish community. A twenty-five page portion of *Illusions*, detailing the journey to San Francisco of the heir's great-grandfather, contains most of the alleged infringing material. The fact that both books touch upon the movement of Jews from Europe to San Francisco and the social relations of wealthy Jewish families in the Bay Area is not enough to establish substantial similarity under the extrinsic test. In *Berkic*, both works dealt with the exposure by a courageous young professional of a criminal organization that murders healthy young people in order to sell their vital organs to wealthy people in need of organ transplants. That degree of similarity was not enough to survive a motion for summary judgment on the extrinsic test. *Berkic*, 761 F.2d at 1293; *see also Olson v. Nation-*

*al Broadcasting Co.*, 855 F.2d 1446 (9th Cir.1988) (affirming j.n.o.v. on basis of no substantial similarity). The degree of similarity between *Our City* and *Illusions* is much more limited.

Neither the mood, pace, nor sequence of the two works are alike. The comparative analytic dissection provided by the plaintiff's expert merely shows a common use of unprotected historical facts and ordinary phrases, not extrinsic similarity. Evidence showing the duplication of historical facts and ordinary phrases does not raise a triable issue of fact. *See Berkic*, 761 F.2d at 1294; *Alberto–Culver*, 466 F.2d at 711. No reasonable juror could conclude that the extrinsic test is satisfied.

### 2. Intrinsic Test

The intrinsic test is used to determine whether the forms of expression of the two works are substantially similar; it is subjective, depending on the response of an ordinary, reasonable reader. *Berkic*, 761 F.2d at 1292. To constitute infringement, the total concept and feel of the works must be substantially similar. *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985).

*Illusions* is a romance novel, styled as popular fiction and focused on the lives of three contemporary characters. The recounting of the great-grandfather's journey provides background for one of the novel's characters and is consistent in mood with the rest of the work. *Our City* is a work of history. Although written in a colorful, narrative style, it bears little resemblance to a work of popular fiction, and no resemblance at all to the basic concept, theme, or mood of *Illusions*. Contrary to Narell's allegations, Freeman has not reworked *Our City* into a love story.

The similarities between the two works are neither quantitatively nor qualitatively significant. Quantitatively insignificant infringement may be substantial only if the material is qualitatively important to either Narell's or Freeman's work. The passages at issue are a small part of Narell's book. Narell's claim that the appropriated materi-al is at the heart of *Our City* is exaggerated. *Cf. Harper & Row*, 471 U.S. at 564–65, 105 S.Ct. at 2232–33 (material taken by defendants was dramatic focal point of plaintiff's work and taking was therefore substantial). *Illusions* neither uses the material in the same manner as *Our City* nor prominently features it. The passages at issue are background material not essential to the novel. The material taken is not qualitatively important to either book.

Because of the fundamental differences between the works and the insubstantial nature of the copied passages, no reasonable reader could conclude that the works are substantially similar. *See Berkic*, 761 F.2d at 1294. The district court's grant of summary judgment on the issue of substantial similarity was proper.

### C. Fair Use

■ The doctrine of fair use allows a holder of the privilege to use copyrighted material in a reasonable manner without the consent of the copyright owner. 17 U.S.C. § 107; *Harper & Row*, 471 U.S. at 549, 105 S.Ct. at 2224–25. Freeman claims that her use of Narell's book qualifies for the privilege. Section 107 of the Copyright Act sets out four factors for evaluating whether a use is a fair use. *Harper & Row*, 471 U.S. at 549, 105 S.Ct. at 2224–25. Those factors are:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

### 1. Purpose and Character of the Use

■ The first factor strongly weighs against Freeman, because commercial use of copyrighted material is presumptively unfair. *Sony Corp. of America v. Universal City Studios, Inc.*, 464

U.S. 417, 449–51, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). Freeman's use is admittedly commercial. Attempting to soften the effect of this presumption, Freeman incorrectly interprets Ninth Circuit fair use doctrine. This court does consider the scope of fair use expanded (but not determinatively) if the original and the copy do not serve the "same intrinsic purpose." *Marcus v. Rowley*, 695 F.2d 1171, 1175 (9th Cir.1983); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 407 (9th Cir.), *cert. denied*, 459 U.S. 879, 103 S.Ct. 175, 74 L.Ed.2d 143 (1982). That doctrine, developed in the context of non-profit educational or governmental purposes, is wholly inapplicable here. Further, the cases cited by Freeman for the proposition that a commercial use does not preclude a finding of fair use offer scant support in her case. *See, e.g., Consumers Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984) (reporting of factual information in advertisement); *MCA, Inc. v. Wilson*, 677 F.2d 180, 185 (2d Cir. 1981) (finding parody of copyrighted song not privileged as fair use). Finally, this factor weighs heavily against Freeman because she did not acknowledge in her work that she had consulted *Our City* in writing *Illusions*, although such an acknowledgment does not in itself excuse infringement. *See Marcus*, 695 F.2d at 1176 n. 8; *cf.* J. Michener, *Alaska* ix–xi (1988); (citing historical authorities used in fictional work); G. Vidal, *Lincoln* afterword (1984) (thanking authority). Nonetheless, the first factor is only one of four factors and does not settle the issue.

### 2. Nature of the Copyrighted Work

■ As a published, historical work, *Our City* is entitled only to the protection of the creative expression contained within it. The scope of permissible fair use is greater with an informational work than a creative work. *See Harper & Row*, 471 U.S. at 563, 105 S.Ct. at 2232; *Consumers Union*, 724 F.2d at 1049. Although this factor weighs slightly in Freeman's favor, Narell's work contains enough creative expression that any use of it is not presumptively fair.

### 3. Amount and Substantiality of Portions Used

This factor essentially repeats the analysis of the substantial similarity test. *See* 3 Nimmer, *supra*, at § 13.05[A][3] (1988). As explained above, no reasonable juror could conclude that *Illusions* is substantially similar to *Our City*. This factor weighs strongly in Freeman's favor.

### 4. Effect on the Market

"This last factor is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566, 105 S.Ct. at 2233. The market factor turns on whether Freeman's use of Narell's book has any effect on *Our City*'s value or marketability. *Sony*, 464 U.S. at 450, 104 S.Ct. at 792–93. Given Freeman's commercial use of Narell's material, the likelihood of future harm may be presumed. *Id.* at 451, 104 S.Ct. at 793. The copyright owner need only show that "should the challenged use become widespread, it would adversely affect the potential market for the work." *Hustler*, 796 F.2d at 1155.

The publication of *Illusions*—or books like it—has not had, and is not likely to have, any effect on the value or marketability of *Our City*. The works are directed to fundamentally different purposes. Readers interested in Narell's book are highly unlikely to find historical romance novels an acceptable substitute. If an author of a novel used Narell's work and was honorable enough to acknowledge sources, such a use might enhance sales of *Our City*. Narell's arguments concerning licensing and adaptations are purely speculative, given the unprotected nature of the facts within her book and the absence of any such offers. *Cf. Abend v. MCA, Inc.*, 863 F.2d 1465, 1481–82 (9th Cir.1988) (re-release of film "Rear Window" unfair use because adaptation rights of author of underlying story adversely affected). Nor can Narell point to any detrimental effect that the publication of *Illusions* might have on the potential release of *Our City* in paperback.

In sum, the first factor weighs strongly in Narell's favor and the second factor slightly favors Freeman. However, a reasonable juror could only conclude that the third and final factors strongly favor Freeman. Because of the predominant role of the market factor, the district court's grant of summary judgment on the fair use defense should be affirmed.

## CONCLUSION

Part of the fascination fiction holds for writers and readers is its ability to interweave real and invented details. Freeman used Narell's work to provide context for her novel, just as storytellers throughout time have used history as source material for works of imagination. *See generally* E. Baker, *Guide to Historical Fiction* (1914) (bibliography). Narell's copyright does not protect the facts and ideas Freeman took from *Our City*. Summary judgment is proper. Freeman did not copy substantial protected portions of Narell's work. *Illusions* and works like it are unlikely to affect the marketability of *Our City*.

AFFIRMED.

HALL, Circuit Judge, special concurrence:

Because I conclude that no protected expression was copied, I agree that the district court properly granted summary judgment to the defendants. I therefore concur in Part A of the majority opinion's discussion.

In my view, this conclusion ends the analysis. We have a solid basis for affirming. It becomes unnecessary to reach the issues of substantial similarity and fair use. Consequently, I respectfully decline to join in the sections of the majority's opinion addressing these issues.