**Harold NORSE, Plaintiff-Appellant,**

v.

**HENRY HOLT AND CO. and Ted Morgan, Defendants-Appellees.**

No. 91–16824.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1992.

Decided April 16, 1993.

Jerome Field, Jerome N. Field, Inc., San Francisco, CA, for plaintiff-appellant.

Daniel A. Ross, Sharfman, Shanman, Poret & Siviglia, New York City, for defendants-appellees.

Before: SCHROEDER, NORRIS, and BRUNETTI, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Appellant Harold Norse is a Beat poet and writer who was a colleague of the writer William Burroughs. Appellee Ted Morgan is the author of a biography, *Literary Outlaw: The Life and Times of William S. Burroughs* ("*Literary Outlaw*"), and appellee Henry Holt and Company, is the book's publisher. Norse charges Morgan and Holt with copyright infringement for copying in *Literary Outlaw* phrases from his copyrighted unpublished letters, which are available at New York University's Fales Library. All the copied phrases appear in the following paragraph of *Literary Outlaw* and are denoted by italics:

Harold thought of himself as *"dark-horse Norse,"* [Letter # 9] ignored and unpublished. He harbored bitter thoughts about his colleagues, whom he thought had more success than he did, while deserving it less. Irving Rosenthal he considered a *monstrous shit, aberrated and power-struck, a diseased faggot clear through* [Letter # 24]. He didn't trust Brion, whom he called *SOBrion* [Letter # 8]—he had to be *the prima donna* [*id.*], and for all his charm, there was a spurious side. These days *he talked only to Burroughs, who talked only to God, with contempt for all else* [Letter # 4]. When the Russians announced that they were sending a woman into space, Harold was amused to see Brion's and Bill's reaction—they thought it was an ominous threat to carry *the matriarchy, the cunt, the Bitch Goddess, into space* [Letter # 11]. What new turn, Harold wondered, would this lead to in Bill's work? *Lesbian colonels attacking fish boys on Mars?* [*Id.*]

*Literary Outlaw* at 394.

On the basis of this single paragraph in *Literary Outlaw*, Norse brought this action against the author and publisher not only for copyright infringement, but also for defamation, unfair competition, and breach of contract. The district court granted summary judgment in favor of the author and publisher on all claims. Norse appeals.[1]

## I. THE COPYRIGHT INFRINGEMENT CLAIM

It is undisputed that Norse owns a valid copyright in his letters, and that phrases from his letters were in fact copied in *Literary Outlaw*. The district court did not decide whether there was a copying of "constituent elements of the work that are original" such as to give rise to liability for copyright infringement. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* —— U.S. ——, ——, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). Nor did the

---

1. We review summary judgments de novo, construing the facts in the light most favorable to the non-moving party. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

district court reach the merits of appellees' fair use defense.

In granting summary judgment in favor of appellees on the copyright claim, the district court relied exclusively on our decision in *Narell v. Freeman*, 872 F.2d 907 (9th Cir.1989). In *Narell*, the author of a history of Jews in San Francisco sued the author and publisher of a novel for copying portions of her text. We held that the defendants were entitled to summary judgment on the ground that the copied phrases, such as "rekindle old memories" and "pitched overboard," were not protected elements of the plaintiff's copyrighted work because they were not original, but factual and banal. *Narell*, 872 F.2d at 911.

In granting summary judgment on the ground that Norse's unpublished letters and the book *Literary Outlaw* are not substantially similar works, the district court relied on language in *Narell* that went beyond our holding that no protected expression was copied. Indeed, we expressly acknowledged in *Narell* that our discussion of substantial similarity was unnecessary to the disposition of the copyright claim. We said:

> Our determination that no protected expression was copied is a sufficient basis for affirming the summary judgment. However, the arguments of the parties and the decision of the district court focused on the issues of substantial similarity and fair use. We address those issues because they were the focus of the matter before the district court and because they offer additional support for our holding.

*Narell*, 872 F.2d at 912. *See also id.* at 915 (Hall, J., concurring) (concluding that it was "unnecessary to reach the issues of substantial similarity and fair use" because "no protected expression was copied").

Thus, *Narell* does not control this case because its holding was that no original expression was copied. Here, it is still

unresolved whether the copied phrases constitute original expression.

As we said in *Narell*, a substantial similarity analysis may be useful in a copyright case when the alleged infringer denies that he in fact copied the plaintiff's work. *Id.* at 910 ("Because in most copyright cases direct evidence of copying is not available, a plaintiff may establish copying by showing that the infringer had access to the work and that the two works are substantially similar."). But here the substantial similarity analysis is inapposite to the copying issue because appellees admit that they in fact copied phrases from Norse's letters.

■ Appellees contend that their copying was so insignificant that it should not be actionable. However, even a small taking may sometimes be actionable. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 565, 105 S.Ct. 2218, 2233, 85 L.Ed.2d 588 (1985) (ruling that taking 300 words from presidential memoirs not fair use when copied words were "the heart of the book"). The question of whether a copying is substantial enough to be actionable may be best resolved through the fair use doctrine, which "'permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster.'" *Stewart v. Abend*, 495 U.S. 207, 236, 110 S.Ct. 1750, 1768, 109 L.Ed.2d 184 (1990) (quoting *Iowa State University Research Foundation, Inc. v. American Broadcasting Cos.*, 621 F.2d 57, 60 (2d Cir.1980)). In evaluating fair use, courts must consider, inter alia, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3) (1988).[2]

■ To sum up, we hold that the district court erred in granting appellees summary judgment on the ground that the two works are not substantially similar. We

---

**2.** Our reasoning here accords with the Second Circuit's analysis in two similar cases also involving a biographer's appropriation of language from his subject's copyrighted, unpublished works. Both *Wright v. Warner Books,*

*Inc.*, 953 F.2d 731 (2d Cir.1991), and *Salinger v. Random House, Inc.*, 811 F.2d 90 (2d Cir.), *opinion supplemented*, 818 F.2d 252, *cert. denied*, 484 U.S. 890 (1987), turned on the issue of fair use.

remand the copyright claim to the district court for further proceedings.

## II.  THE LIBEL CLAIM

Norse claims that the following sentence, which describes Norse when he lived in Tangier in 1963, is libelous:

> Harold thought of himself as "dark-horse Norse," ignored and unpublished.

*Literary Outlaw* at 394.  Norse contends that this sentence is defamatory under California law because it erroneously says that he was unpublished in 1963.

██ We must first decide whether the statement in question is capable of the defamatory meaning Norse ascribes to it. *Weller v. American Broadcasting Companies, Inc.*, 232 Cal.App.3d 991, 1001 n. 8, 283 Cal.Rptr. 644 (1991).  To discern whether a statement has a defamatory meaning, we interpret it from the standpoint of the average reader, *MacLeod v. Tribune Publishing Co.*, 52 Cal.2d 536, 546–47, 343 P.2d 36 (1959), judging the statement not in isolation, but within the context in which it is made.  *Restatement (Second) of Torts* § 563 cmt. d (1977).

██ Examined from this perspective, the sentence is plainly not, as Norse claims, an account of his publishing history, but rather a description of his state of mind at a particular time in his life.  We agree with the district court that "[t]he statement at issue here is not whether he was or was not published, but what Mr. Norse's mental attitude was about how he was viewed in the poetic community back in 196[3]...."  The disputed statement appears in a paragraph that discusses Norse's feelings about his colleagues, not his own publication failures.  On the face of it, the statement is merely an elaboration on Norse's own characterization of himself as "dark-

horse Norse," a phrase that was copied from one of Norse's letters from the period.  In context, the word "unpublished" does not mean literally that Norse had never published before 1963.  Rather, it reflects Norse's own perception of himself as an artist who was unfairly neglected and ignored, a poet who believed that he was not as successful as he deserved to be in his publishing efforts at that stage in his career.[3]

We thus agree with the district court that no reasonable reader could understand the sentence, when read in context, to mean that Norse had never published before 1963.  Rather, a reasonable reader would understand the sentence and the passage to mean that in 1963 Norse thought of himself as unfairly neglected by the literary community.

██ We recognize that a statement about someone's perception of himself can, under California law, be actionable if it implies a false factual assertion.  *See Weller*, 232 Cal.App.3d at 1001 n. 7, 283 Cal. Rptr. 644.  But in this case, the statement about Norse's self-perception is not actionable because Norse does not argue that this assertion is false—i.e., he does not deny that this is how he perceived himself at the time.  Given that Norse is a limited purpose public figure,[4] the First Amendment requires him to establish that the allegedly defamatory statement is false in order to sustain an action for libel.  *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986).  Accordingly, because Norse does not dispute the accuracy of the book's description of his feelings in 1963, but rather ascribes to the statement a meaning it does not carry, we affirm the

---

3.  In fact, when the statement is read in the context of the entire book, it becomes clear that *Literary Outlaw* portrays Norse not as a failure, but as a distinguished poet.  The book first introduces Norse as "[t]he *poet* Harold Norse," implying that Norse was an established poet. *Literary Outlaw* at 314 (emphasis added).  Later, in a transition from a paragraph referring to Norse, Allen Ginsburg, and William Burroughs, the book states: "As for the *other lead-*

*ing poets,* Jack Kerouac had moved...." *Id.* at 394 (emphasis added).  Thus, Norse is characterized as a leading poet who is in the company of such renowned figures as Ginsburg, Burroughs, and Kerouac.

4.  The district court ruled that Norse is a limited purpose public figure.  Neither party challenges that ruling on appeal.

summary judgment in favor of appellees on the libel claim.

## III. THE UNFAIR COMPETITION CLAIM

■ Norse claims that appellees violated California unfair competition law by "misappropriat[ing] copyright[ed] material" and "palm[ing]" it off as their own. We affirm the summary judgment on that claim because we agree with the district court that the claim is preempted by federal copyright law. *Fisher v. Dees,* 794 F.2d 432, 440 (9th Cir.1986).

## IV. THE BREACH OF LIBRARY AGREEMENT CLAIM

■ Norse also claims that appellees breached an agreement covering access to his letters at the Fales Library. Norse alleges that the following agreement between the library and its patrons was in effect at the time appellee Morgan used the letters:

> [I]t is understood that while the Fales Library grants you the right to reproduce the Harold Norse materials in its possession, it can in no way give you legal, literary rights to publish this material. Such rights, you and/or your publisher(s) must obtain in a formal, legal statement from the heirs or executors of such materials as you may wish to publish. In granting reproduction rights, the Fales Library acts only as owner of the physical originals (of mss., prints, etc.) and takes no responsibility for any possible infringement of copyright laws in the publication of material.
>
> The Fales Library extends to you access to the materials in its possession on your agreement to the foregoing statements and understanding of them.[5]

Norse seeks to enforce the agreement as a third party beneficiary. The district court, however, rejected this contract claim on the ground that the library agreement did not give Norse any enforceable rights. We agree.

The plain purpose of the agreement was to protect the library by putting the user on notice that the library did not grant any right to publish copyrighted material. Any benefit to Norse from this agreement was purely incidental. We agree with the district court that nothing in the agreement suggests that the parties intended to confer any rights on Norse as a third party beneficiary. The summary judgment on the library agreement claim is thus also affirmed.

## V. THE BREACH OF ORAL CONTRACT CLAIM

■ Norse also claims that Morgan breached an oral agreement to mention Norse's memoirs in *Literary Outlaw.* Norse's theory of damages is that he lost the "economic benefits and recognition" that would have accrued from a reference to his memoirs in *Literary Outlaw.*[6] The district court granted Morgan summary judgment because of the absence of any proof of damage. We affirm. We agree with the district court that there is no evidence that Norse suffered any meaningful loss and that his breach of contract claim "falters on the basic requirement of California Civil Code Section 3301."[7]

## CONCLUSION

The district court's order granting summary judgment in favor of appellees on the libel, unfair competition, and contract claims is AFFIRMED. The order granting summary judgment in favor of appellees on the copyright infringement claim is RE-

---

**5.** Appellees argue that a different agreement covered appellee Morgan's access to the letters, but we accept Norse's version of the agreement for summary judgment purposes.

**6.** Norse claims on appeal that he also suffered damages from the alleged breach because he wasted time in granting appellee Morgan two interviews. Because Norse did not make this

argument before the district court, we decline his invitation to address it here.

**7.** California Civil Code § 3301 provides: "DAMAGES MUST BE CERTAIN. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."

VERSED and that claim is REMANDED for further proceedings.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.