Sylvia **FLEENER**, Plaintiff,

v.

**TRINITY BROADCASTING
NETWORK, et al.**
**Defendant**

**No. 00CV7471 LGB (BQRx).**

United States District Court,
C.D. California.

Sept. 5, 2001.

Daniel Joseph Quisenberry, Gary W Nevers, Nevers Palazzo Maddux & Packard, Westlake Village, CA, for Sylvia Fleener, plaintiff.

John C Rawls, Maria K Nelson, John J Murphy, III, Jones Day Reavis & Pogue, Los Angeles, CA, Karen R Thorland, Loeb & Loeb, Los Angeles, CA, Gregory A Castanias, Lawrence D Rosenberg, Jones Day Reavis & Pogue, Washington, DC, Colby M May, Colby M May Law Offices, Washington, DC, for Trinity Broadcasting Network, Inc., TBN Films, Western Front Ltd., defendants.

John J Murphy, III, Jones Day Reavis & Pogue, Los Angeles, CA, John Bethany Casoria, John B Casoria Law Offices, Newport Beach, CA, for Paul Crouch, defendant.

John Bethany Casoria, John B Casoria Law Offices, Newport Beach, CA, for Jan Crouch.

Charles M Coate, Cara Blake, Barab Abrams & Coate, Beverly Hills, CA, for Code Productions Inc, CEO Films LLC, Providence Entertainment, Matthew Crouch, Stephan Blinn, Hollis Barton aka Barton Green, defendants.

John C Rawls, John J Murphy, III, Jones Day Reavis & Pogue, Los Angeles, CA, Charles M Coate, Barab Abrams & Coate, Beverly Hills, CA, for Gener8xion Entertainment, Inc., defendant.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF THE ISSUES

BAIRD, District Judge.

### I. INTRODUCTION

This action arises out of a copyright dispute between Plaintiff Sylvia Fleener ("Fleener") and Defendants Trinity Broadcasting Network, Inc. ("TBN"), Trinity Christian Center of Santa Ana, Inc. ("Trinity Christian"), TBN Productions, Inc ("TBN Films"), Gener8xion Entertainment, Inc. ("Gener8xion"), and Western Front, Ltd. ("Western Front", collectively "Defendants"). Currently before the Court is Defendants' motion for reconsideration of the Court's October 30, 2000 Order ("Order").[1]

### II. PROCEDURAL BACKGROUND

Fleener filed the current, First Amended Complaint ("Amended Complaint") on April 17, 2001. In the Amended Complaint, Fleener alleged Defendants infringed her copyright in her book, *The Omega Syndrome*. The infringement was based upon Defendants work involving the book, *The Omega Code* and its corresponding movie adaptation. (*See* Order at 1–2.)

In her second and third causes of action, Plaintiff alleged violations of the Lanham Act and a California unfair competition claim against Defendants. Subsequently, the current Defendants filed an Answer to the Amended Complaint on May 17, 2001.

Prior to the filings of the Amended Complaint and Answer, defendants TBN, TBN Films, and Western Front filed a Motion for Summary Judgment on September 25, 2000. This motion was joined

---

1. Defendant's style their motion as a motion of summary judgment or summary adjudication of issues, or even as a *renewed* summary judgment motion, but, as will become clear,

Defendants ask this Court to reconsider the earlier Order denying Defendants' request for summary judgment. (*See* Def. Memo. at 5.) The Court treats the motion accordingly.

by Gener8xion on September 27, 2000. On October 30, 2000, this Court filed its Order denying the motion for summary judgment.

Defendants now bring this Motion for Summary Judgment or. In the Alternative, for Summary Adjudication of the Issues, filed July 16, 2001. The Court has received Defendants' motion, as well as all supporting papers. Additionally, Plaintiff submitted her Memorandum in Opposition ("Pl.Opp."), as well as supporting papers, on August 13, 2001.

## III. FACTUAL BACKGROUND

The Court's previous Order recited the facts in detail, and all parties are assumed familiar with them. The Court recapitulates a few facts for ease of understanding and will mention other, more recent developments.

Plaintiff's novel, *The Omega Syndrome* (*"The Syndrome"*), occurs within an apocalyptic genre and focuses on the fulfillment of the Biblical prophecy concerning the Anti–Christ. (*See* Order at 2–3.) Paul and Jan Crouch and Lance Charles wrote a book entitled *The Omega Code* (*"The Code* Novel"), that was published in 1999. (*Id.* at 2.) Defendants TBN Films and Gener8xion Entertainment produced a film, also entitled *The Omega Code* ("The Code Film"), which was theatrically released in 1999. (*Id.*) Both *Omega Code* works are also set within the apocalyptic genre and concern the Biblical prophecy of the Anti–Christ. (*Id.* at 4–5.)

In its Order, this Court held that there was a genuine issue of material fact regarding access to Plaintiff's work by Defendants.[2] (*Id.* at 11–12.) The Court also rejected Defendants' arguments that the two sets of works (*The Syndrome* and *The Code* ) were not substantially similar under the "extrinsic test" applied by the Ninth Circuit. (*Id.* at 34.) Specifically, this Court found that there were genuine issues of material fact as to the substantial similarity of certain themes, plot elements and settings found in the works. (*Id.* at 16, 26, 34.) These similarities were sufficient to defeat Defendants' arguments for summary judgment.

In particular, the Court focused on concrete similarities such as Rabbis deciphering a Biblical code as they related to the "central theme embodied in the works of using the Bible to provide insight into the developments of the near future." (*Id.* at 15.) Also, the Court highlighted the junction of disasters following the adoption of one common world government and one common religion. (*Id.* at 16.)

In relation to plot and the sequence of events, the Court found that six common elements were sufficient to permit a jury to find substantial similarity. These elements were:

- Both lead characters become heads of large political organizations based upon the political unification of Europe. This position then leads to even more powerful positions. (*Id.* at 18–19.)
- Both lead characters gain respect from advances in food and anti-nuclear technologies. (*Id.* at 19–20.)
- Both lead characters present their anti-nuclear technology at a meeting of delegates from various nations of the world. (*Id.* at 20.)
- Both lead characters orchestrate a peace treaty between nations, which results in global unification. (*Id.* at 21–22.)
- Both lead characters endorse a vision of a common world government *modeled* on the Roman Empire. (*Id.* at 23–24.)

---

**2.** The Court rejects Fleener's argument that there is any less dispute about relevant access—who saw the book—now than there was in September and October, 2000.

• Both lead characters are killed by a gunshot wound to the head, and become evil after their resurrection. Further, the wound reappears when the lead character is defeated. (*Id.* at 25–26.)

In analyzing the artistic works, the Court also rejected an argument that the plot device of religious advisors realizing the nature of the lead character's evil and turning on him was protectable. (*Id.* at 22–23.) The Court did, however, find that the unfolding of the story against a backdrop of European summits and international political upheaval, especially in light of the modern-day political setting of Europe, created a genuine issue of fact with regard to substantial similarity of setting. (*Id.* at 33.) This was reinforced by the opulent settings in Rome as the residence of both lead characters. (*Id.* at 33–34.)

Although the Order did not parse every single detail of both works, these similarities were held sufficient to create a genuine issue of material fact as to substantial similarity. (*Id.* at 34.) Additionally, the Order addressed Defendants' arguments relating to the Lanham Act and California unfair competition claims (*Id.* at 35–38.) In so doing, this Court rejected Defendants' "Reply attempts to rephrase the argument[s] in order to challenge the sufficiency of Plaintiff's evidence as to the substantial similarity *between the trade dress* of the two works." *Id.* at 36 (emphasis in original).

Defendants now argue that the currently available additional testimony of experts should lead this Court to review its decision.[3] (Def. Memo. at 1.) In particular, Defendants focus on arguing how each of the story pieces utilized in the Order are not actually protectable by copyright. (*Id.* at 6.) They place particular reliance on

notions of lack of originality and the concept of *scenes a faire*. (*Id.* at 6.)

As to the Lanham Act and unfair competition claims, Defendants stress that Fleener cannot establish her secondary meaning or likelihood of confusion. (*Id.* at 27–29.) In their Reply Memorandum filed October 16, 2000, concerning the first motion for summary judgment, Defendants also argued that "plaintiff has presented no evidence whatsoever that the cover of her book ... has acquired secondary meaning ..." and that "plaintiff has not come forward with evidence ... to find likelihood of confusion." Defendants' Reply Memo. at 24.

## IV. LEGAL STANDARDS

### A. MOTION FOR RECONSIDERATION

■ A motion for reconsideration of the decision on any motion may be made on the grounds of (1) a material difference in fact or law from that presented to the Court before such decision that, in the exercise or reasonable diligence, could not have been known to the party moving for reconsideration at the time of such decision; (2) the emergence of new material facts or a change of law occurring after the time of such decision; or (3) a manifest showing of a failure to consider material facts presented to the Court before such decision. *See* Local Rule 7.18. *See also School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993) (reconsideration appropriate if court "committed clear error or the initial decision was manifestly unjust.") Rule 7.18 further provides that "[n]o motion for reconsideration shall in any manner repeat any oral or written

---

**3.** At argument, counsel maintained this *is not* a motion for reconsideration, blissfully ignoring that the entire copyright argument is a sustained attack on the prior Order's conclusions as to what constituted Fleener's concrete, protectable expression. Although Defendant has added new facts, the argument retreads ground covered earlier.

argument made in support of or in opposition to the original motion." *Id.*

## B. MOTION FOR SUMMARY JUDGMENT

The instant motion challenges the Court's denial of summary judgment, making review of the summary judgment standard appropriate.

 "The test for summary judgment in a copyright case must comport with the standard applied to all civil actions." *Shaw v. Lindheim,* 919 F.2d 1353, 1358 (9th Cir.1990). Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

 The party moving for summary judgment bears the initial burden of informing the district court of the basis of the summary judgment motion, and of demonstrating the absence of a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Katz v. Children's Hosp. of Orange County,* 28 F.3d 1520, 1534 (9th Cir.1994). On an issue for which the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

 Once this initial burden is satisfied, the non-moving party is required to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts' showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotations omitted). *See also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec,* 854 F.2d 1538, 1544 (9th Cir.1988). Where the standard of proof at trial is preponderance of the evidence, the non-moving party's evidence must be such that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Additionally, Rule 56(d) of the Federal Rules of Civil Procedure provides that if judgment is not rendered upon the whole case, the court shall ascertain *if practicable* "what material facts exist without substantial controversy[.] Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly." Fed R. Civ. P. 56(d).

## V. APPLICATION

Defendant's motion for reconsideration challenges the Court's Order as it pertains to each of Plaintiffs' claims The Court will address each claim in turn.

### A. COPYRIGHT INFRINGEMENT

 Defendants hinge their argument for reconsideration on the expert evidence developed after the summary judgment Order. See Def. Memo. at 3. There is abundant case-law establishing that expert testimony is particularly appropriate in summary judgment motions under the copyright "extrinsic test." *See, e.g., Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1473–74 (1992). Here, Defendants make no argument that with

"reasonable diligence" they could not have known of these "material difference[s] in fact," or their potential importance to their legal arguments. *See* Local Rule 7.18. Rather, they focus on Local Rule 7.18(b)'s "emergence of new material facts." *Id.* Although the Court recognizes the submission of a substantial number of new facts. Defendants' motion fails on the requirement of materiality.

Defendants' entire argument is built on three related efforts. First, the bulk of Defendants' material is directed at establishing Fleener's work is not original, and thus not subject to copyright. (*See, e.g.,* Def. Memo at 8.) Second, Defendants focus on the individual elements identified in this Court's prior order and argue that they are also just "general ideas" and therefore not entitled to copyright protection. (*See id.* at 7.) Finally, Defendants characterize other elements of Fleener's work as *scenes a faire.* (*See id.* at 6.) Each set of arguments suffers from a fatal flaw that dooms the entire project.

### 1. Defendants' argument against originality

The main theme of Defendants' arguments centers on the unoriginality of Fleener's work because, apparently, *every* expression this Court relied on can be generally traced to or analogized to some other prior work in the genre. (*See id.* at 7–23.) Defendant's primary expert, Paul Boyer, matches individual expressions of Fleener's work with works ranging from William Whiston's *Vindication of the New Theory of the Earth* (1696), see Def. Ex. A at 47, to Pat Robertson's *The End of the Age* (1995), see *id.* at 56. Both Defen-

dants' Memorandum of Pointe and Authorities and their experts argue that "none of the elements [dealt with] are new or novel expressions." Def. Memo. at 8

■ This standard is, however, erroneous. Originality "means only that the work was independently created by the author (as opposed to copied from other works)" and that it meets an extremely low threshold of creativity. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Although Defendants' evidence *could* create the inference that Fleener hunted down each of the works listed and copied from it, this inference is far from compelling. The fallacy underlying Defendants' arguments is illustrated by Learned Hand:

> If by some magic a man who had never known it were to compose anew Keat's Ode On a Grecian Urn, he would be an "author," and if he copyrighted it, others might not copy that poem, though they might of course copy Keats.
>
> *Sheldon v. Metro–Goldwyn Pictures Corp.,* 81 F.2d 49, 54 (2d Cir.1936).

■ The attempt to denigrate Fleener's originality by showing similar expressive examples without any indication that Fleener accessed or bodily appropriated these other works neither compels reversing the Court's earlier judgments nor meets the test of materiality.[4] Rather it is, in the words of Federal Rule of Evidence 403, "substantially outweighed by the danger of . . . confusion of the issues."

At the hearing, Defendants stressed the need to consider "the public domain." The public domain is relevant in two ways: either as the source of Fleener's work, or

---

**4.** *See, e.g., Chase–Riboud v. Dreamworks, Inc.,* 987 F.Supp. 1222, 1226 (C.D.Cal.1997) ("copyright protection does not extend to . . . material *traceable* to common sources[.]"). (emphasis added) (citations omitted). *See also Reed–Union Corp. v. Turtle Wax, Inc.,* 77 F.3d 909, 914 (7th Cir.1996) (describing effect of public domain on copyright using "West Side Story"); Pl. Reply at 1 (quoting "no protection [if] *borrowed* from . . . the 'public domain[.]' ").

as the source of Defendants' works. The Court's prior Order addressed the former, insofar as the Bible served as an undisputed fountainhead for this genre. The Court rejected Defendants' invitation then and rejects it now, to explore every possible predecessor to Fleener's work absent a self-evident, undisputed showing of traceability to Fleener. This showing of traceability has not even been attempted in the present motion.[5] This strategy does not support reconsideration.

## 2. General ideas

Defendants also stress their belief that many of the concrete expressions identified in this Court's prior order are actually "general ideas" not subject to copyright protection.[6] The Court's previous Order did reject some of Fleener's proffered items of infringement as general ideas. (*See, e.g.,* Order at 14–15.) For those items relied on in the decision, however, the Court identified each as a sufficiently concrete expression to be deserving of copyright protection. *See, e.g., id.* at 15 ("specific similarities"), 16 ("concrete elements"), 17 ("sufficiently concrete").

Defendants' continuing arguments over generality may be the result of a conceptual confusion between ideas, expressions, and the "ideas" that are used as part of the extrinsic test. *See Shaw v. Lindheim,* 919 F.2d 1353, 1356–57 (9th Cir.1990) (discussing extrinsic test). On the one hand, the extrinsic test is applied to *both* ideas and expressions in a work. *See id.* On the other, there is a filtering process to ensure that unprotected general ideas are not utilized in the extrinsic test. *See, e.g., Brown Bag Software,* 960 F.2d at 1475–76.

■ In performing the extrinsic test, it is important to remember that we are dealing with the medium of books. Capable of infinite expression, they are accorded "thick" copyright protection. *See, e.g., Shaw,* 919 F.2d at 1360. Here we deal with the overlap between comprehensive similarity that is not word-for-word and the lack of protection for general ideas. *See Nimmer on Copyright* § 13.03[A][1], at 13–29.

■. The extrinsic test requires the Court to measure up certain patterns against the ideas, not of "generality," but of plot, theme, sequence of event, mood, character and dialogue. *See Shaw,* 919 F.2d at 1359, 1362. In deciding what level of protected concrete expression to compare, the analytic heart of the extrinsic test is picking an "operative pattern for purposes of determining substantial similarity ... that is in some degree abstract ... but is nevertheless sufficiently concrete so as to contain an expression of the sequence of events and the interplay of major characters." *Nimmer on Copyright* § 13.03[A][1][b], at 13–32.[7]

■ The Court's prior order did precisely that—finding several different sufficiently concrete elements of similarity, all linked to the plot/sequence of events, theme and setting.[8] Moreover, even if De-

---

5. Defendants also have not attempted to show that *their* work was derived from these public domain or prior works.

6. The Court rejects Defendants' invitation to consider fictional and/or Biblical interpretations as historical fact. *Cf. Narell v. Freeman,* 872 F.2d 907, 910 (9th Cir.1989) (scope of copyright in historical accounts is narrow).

7. Nimmer uses the example of "Romeo and Juliet" and "West Side Story" to illustrate the

process. *See Nimmer on Copyright* § 13.03[A][1][b], at 13–33, 34.

8. The prior Order's conclusion of *concreteness* is not altered by Defendants' various examples of prior work. Just as they fail to answer the question of originality, they do not answer the question as to *which* "operative pattern" Fleener's creative expression adheres. To the extent they *could* alter the Court's analysis, it

fendant could succeed in characterizing each element as too general, copyright also protects the expressive act of arranging completely unprotected works. *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir.1994). The Court found no need to address this possibility, raised by Plaintiff's opposition, as the significant overlap of important plot developments combined with thematic and setting similarities creates a genuine issue of material fact as to substantial similarity.[9]

### 3. Scenes a faire

■ Finally, Defendants also assert in their Statement of Uncontroverted Facts that several scenes are *scenes a faire* Scenes a faire are not uncopyrightable, *per se*, but they are excluded from the extrinsic analysis.[10] *See Apple Computer*, 35 F.3d at 1444 (comparing and contrasting *scenes a faire* with merger doctrine).

■ The Defendants have not, however, brought forward material evidence compelling this Court to conclude that, as

a matter of law, *any* of these elements are standard or indispensable elements of the end-of-times genre.[11] At most, this new information suggests that any given element *might* be standard. Even for those examples for which Defendants establish a plausible link to the Bible—the source of this genre—they fail to establish that these elements are standard, much less indispensable.[12] *See, e.g.*, Def. Ex. A at 46 (eight examples showing role of disasters, only one tied to Anti–Christ formation of a world government).

Fleener correctly points out that Defendants' experts fail to analyze *The Syndrome's* points of commonality through the correct legal lens. Given the Court's finding that the listed portions of the story were concrete expressions and the "thick" protection afforded fictional books, Defendants unsuccessfully battle against the law and facts in attempting to reclassify *every* relied-upon concrete aspect of *The Syndrome* as a standard element of this genre. *Cf. Sid & Marty Krofft v. McDonald's*

would be in establishing these elements as *scenes a faire*.

9. The Court stresses that it misses the point of copyright to analyze every expression of plot separately without regard to the plot's unitary nature. *See Sid & Marty Krofft Television Prod. Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1166–67 n. 9 (9th Cir.1977) (relying on "trees, caves, a pond, a road and a castle" in dissecting two artistic works and finding substantial similarity); *see also Dr. Seuss Enter. v. Penguin Books USA Inc.*, 109 F.3d 1394, 1399 (9th Cir.1997) (back cover illustration and drawings of hat sufficient under objective analysis).

10. In other words, a literal, word-for-word copying of *scenes a faire* could infringe copyright. *Cf. Narell*, 872 F.2d at 912 (conceding direct copying of "historical" work could constitute infringement). The protection for *scenes a faire*, however, is quite thin. *See, e.g.*, Order at 14 (implicitly finding mortal wounding and final battle themes drawn from Bible as necessary for this genre).

11. In Defendants' Reply brief, they argue that Fleener's experts, although unqualified, concede the *scenes a faire* or originality analysis propounded by Defendants. Each example pointed to, however, involves language such as *"can be explained,"* or *"might conceivably have been drawn."* Def. Reply at 19. Nor do Defendants address the more specific findings of this Court, such as to *how* the nations are induced to enter a peace treaty in the works— e.g. by meeting revealing anti-nuclear technology.

12. The "at least standard" analysis, although close for certain elements, is hindered by a lack of explanation as to the range of expression common to *all* books in the genre, lack of discussion about the more concrete elements used in the Court's order, and lack of analysis directed at the plot elements as a whole. *See Ets–Hokin v. Skyy Spirits Inc.*, 225 F.3d 1068, 1082 (9th Cir.2000) (focusing on *necessary* flow, holding *scenes a faire* are infringement defenses). There is no evidence establishing these elements are "indispensable."

*Corp.*, 562 F.2d 1157, 1166–67 (9th Cir. 1977) (describing dissection run amok); *Reed–Union*, 77 F.3d at 914 ("But each expression of a theme can claim protection *to the extent* it differs from its predecessors.") (emphasis added). Although this is a closer issue than the other two prongs of Defendants' attack, Defendants have failed to fulfill their burden to establish any relied-on element is standard in the genre, much less indispensable. The inferences from the facts brought forward are disputable, leaving a genuine issue of material fact as to each element. Thus, the Court concludes that this factor does not weigh in favor of reconsideration.

The new facts brought forward by Defendants fail to lead to the conclusion that this Court's prior Order was error, much less clear error or manifestly unjust. There still remains a genuine dispute of material fact on the issue of substantial similarity under the extrinsic test. Therefore, the Court DENIES Defendants' motion for renewed summary judgment.

## B. SUMMARY ADJUDICATION

■ Defendants also assert that summary adjudication would be appropriate. Federal Rule of Civil Procedure 56(d) requires that summary adjudication be practicable. Here, several factors prevent that practicability.

First and most significantly, even if each and every factor were unprotectable. as a matter of law, Plaintiff might still be able to present this evidence to the jury as part of the intrinsic test.[13] *See Apple Computer,* 35 F.3d at 1446 (unprotectable elements should be *identified* to jury *or* filtered). Second, although it is clear that even for those areas where the Court held, as a matter of law, that certain themes were too general or otherwise unprotected,

there remains the possibility that Fleener will formulate an argument based ·solely on sequence and arrangement. *See Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir.2000) (upholding verdict of substantial similarity based on five unprotectable elements).

The failure of Defendants to establish their arguments does not require Fleener to advance *every* theory potentially available. Finally, as Fleener correctly points out, the list of similarities in the Amended Complaint is not exhaustive. Additional facts, variations on themes, and the like may significantly affect a jury's analysis as to any individual theme or plot sequence.

For all these reasons, the impracticability involved in tailoring any grant of summary adjudication to the realities of this copyright trial lead this Court to DENY Defendants' request for summary adjudication.

## C. LANHAM ACT AND UNFAIR COMPETITION CLAIMS

■ Unlike Defendant's copyright arguments—which may claim some independent standing from Defendants' previous motion for summary judgment—their arguments on the Lanham Act and Unfair Competition assert claims raised in their first Reply brief. This Court concluded then that the arguments were improperly presented, and Local Rule 7.18 strongly dictates the same conclusion. Local Rule 7.18 ("no motion for reconsideration shall *in any manner* repeat *any* oral or written argument made in support of or in opposition to the original motion." (emphasis added)); *see* Order at 35–38.

Defendants argue that this puts them in a "catch–22" position; their arguments

---

**13.** Fleener acknowledges that certain findings of this Court foreclose presentation to the jury, as part of the extrinsic test, of those discussed elements relating to mood, pacing and excessively general themes or plot lines.

were not considered on the merits in the first motion for summary judgment, yet that fact is used against them to prevent them from *ever* presenting these arguments to the Court, pre-trial. In effect, they argue, such a reading of Local Rule 7.18 acts as an unfair waiver.

Perhaps this is so. At the same time this unfortunate turn of events was created by Defendants' own tactical decisions. Defendants chose to file their original motion for summary judgment *before* their motion to dismiss was decided. Defendants chose to then try and shift their arguments midstream on these claims Finally, Defendants failed to present this issue squarely to the Court as a separate summary judgment issue by attaching the argument to what is, in effect and in length, a mis-styled motion for reconsideration.

Presenting the issue to a jury could—if their arguments have merit—result in inefficiency. At the same time, the failure to respect the demands that mis-timed or ill-conceived motions, lack of editorial restraint, and a lack of candor impose upon the judicial system and the public treasury also lead to inefficiency. If Defendants' arguments have merit, judgment as a matter of law may be appropriate, but any "unfairness" at this point is attributable to Defendants' tactical choices

The Court therefore DENIES Defendant's request for reconsideration or summary adjudication as to these two claims.

## VI. CONCLUSION

Because Defendants have failed to bring forward sufficiently material new facts on the copyright claim, and have failed to advance any new arguments for the Lanham Act and unfair competition claims, the Court hereby DENIES Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**